Filed 9/26/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JEFFREY COOPER, | B251508 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SS023190) |
| v. | |
| LAVELY & SINGER PROFESSIONAL CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Reversed and remanded with directions.

Lyle R. Mink for Plaintiff and Appellant.

Lavely & Singer Professional Corporation, Michael E. Weinsten and Paul N. Sorrell for Defendant and Respondent.

In the underlying arbitration proceeding, the arbitrator initially issued a "Final Award" denying a request for an award of attorney fees by respondent Lavely & Singer Professional Corporation (L & S). The arbitrator later modified the Final Award to include a fee award, and issued a "Revised Final Award." Appellant Jeffrey Cooper challenges the trial court's confirmation of the Revised Final Award. We conclude that the arbitrator exceeded his powers in modifying the Final Award and in issuing the Revised Final Award. We therefore reverse the judgment, and remand the matter with instructions to the trial court to correct the Revised Final Award by striking the attorney fee award, and confirm the award, as corrected.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A.    *Prior Proceedings*

In 2003, Cooper met Larry Solomon and Adam Linter, who described certain entertainment-related projects they were pursuing through a production company called "Hopeful Monster, Inc." (HMI). In September 2003, Cooper entered into a revenue sharing agreement with HMI, which obliged Cooper to invest $250,000 in HMI.

In 2009, after coming to suspect that HMI was a sham, Cooper retained L & S. Cooper's legal services contract with L & S obliged him to submit all claims arising under the contract, including malpractice claims, to "mandatory" arbitration pursuant to the rules of JAMS or other specified arbitrators. The contract also contained an attorney fee provision, which provided for a fee award to the prevailing party in any such arbitration.

On Cooper's behalf, L & S initiated a fraud action against HMI, Solomon, and the estate of Linter, who was then deceased. Solomon secured an order compelling arbitration of Cooper's claims pursuant to an arbitration clause in Cooper's agreement with HMI. In September 2010, the arbitrator (retired Judge Alan Haber) concluded that Cooper had not established his claims, and issued an award against Cooper and in favor of HMI.

B. *Underlying Arbitration*

1. *Interim Award*

In September 2011, Cooper commenced an arbitration against L & S by filing a demand for arbitration with JAMS. Cooper asserted claims for breach of contract, breach of fiduciary duty, and professional negligence arising out of L & S's representation in the proceedings against HMI, Solomon, and the estate of Linter. The matter was submitted to arbitration before retired Judge Terry Friedman. L & S represented itself in the arbitration.[1]

On December 14, 2012, following an evidentiary hearing, the arbitrator issued his "Interim Award." The arbitrator concluded that Cooper had failed to establish his claims against L & S, and that L & S was the prevailing party. In view of those determinations, the arbitrator permitted L & S to file a motion for an attorney fee award and a memorandum of costs, and afforded Cooper an opportunity to respond.

---

[1] We take judicial notice of the then-effective rules of JAMS, after having afforded the parties an opportunity to address the propriety of judicial notice. (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 506, fn. 6.)

2.    *Fee Motion*

On December 21, 2012, L & S submitted a motion for an award of contractual attorney fees under Civil Code section 1717.  L & S argued that although it had represented itself in the arbitration proceeding, it was entitled to the fee award because Lloyd's, London and Companies (Lloyd's), its professional malpractice insurer, had "specifically retained" L & S to represent its own interests in the proceeding.  L & S sought fees totaling $225,677.

Supporting the motion was a declaration from Paul N. Sorrel, a partner in L & S.  Sorrel stated:  "Shortly after this proceeding was filed by [Cooper], the defense of this matter was tendered to [Lloyd's] pursuant to the terms of [L & S's] professional liability policy.  Pursuant to [that] policy . . . , [L & S] pays substantial premiums in order [to have] the ability (with Lloyd's consent) to self-represent in certain malpractice actions . . . .  After this matter was tendered to Lloyd's, Lloyd's authorized and retained [L & S] to represent [L & S's] interests in this matter, and indicated that it would reimburse [L & S] (subject to the applicable deductible under the policy) for fees and costs incurred in defending this matter."

Cooper's opposition maintained that as a matter of law, L & S could not recover its fees because it had represented itself in the arbitration proceeding.  In addition, Cooper contended that L & S had offered insufficient evidence of an agreement or attorney-client relationship between L & S and Lloyd's, arguing that when deposed, Sorrell had testified that he had no personal knowledge of the identity of L & S's professional malpractice insurer.  Cooper also objected to Sorrell's declaration statements regarding the retention of L & S by Lloyd's on several grounds, including that the statements constituted hearsay.

4

On January 3, 2013, Sorrell e-mailed a request to the arbitrator for leave to submit additional evidence. Sorrell stated: "Certain matters were raised in Mr. Cooper's opposition to the [fee] motion that could not be anticipated, and to which [L & S] would like an opportunity to respond. Among other things, we would like to provide a copy of the insurance policy, . . . and/or a declaration from the carrier, as well as my declaration addressing how and when I learned the specifics of the terms of coverage."

In an order dated January 4, 2013, the arbitrator granted Sorrell's request in part and denied it in part, ruling that L & S would be permitted to offer documentary evidence regarding its malpractice policy, but no "further declaration or other testimonial evidence." Following the ruling, L & S submitted its Lloyd's malpractice policy, accompanied by a declaration from Susan Such, L & S's office administrator. Such stated: "Attached . . . [is a] copy of [L & S's] . . . policy that was in effect from March 31, 2011 to March 31, 2012. [L & S] tendered the claim made against it by [Cooper] in this proceeding under *this* policy *in February 2011*." (Italics added.)

In response to Such's declaration, Cooper maintained that L & S's malpractice policy could not establish a basis for L & S's fee request, contending that "[n]o case holds that a lawyer can recover fees for self-representation if he has a malpractice policy, with or without a self-representation endorsement." Cooper also argued: "[Such] states that L & S tendered the claim in February 2011. Cooper did not file his claim with JAMS until September 13, 2011."

3.    *Final Award*

In a Final Award dated January16, 2013, the arbitrator denied L & S's request for an award of attorney fees. The arbitrator stated: "L & S is the

5

prevailing party in this arbitration. . . . However, L & S presented no admissible evidence that Lloyd's retained L & S. In addition, the admissible evidence L & S did present is inconclusive. According to Such, L & S tendered Cooper's claim in February 2011, yet Cooper did not file his [d]emand for [a]rbitration against L & S until September 13, 2011. Moreover, the date of tender preceded the March 31, 2011 [to] March 31, 2012 period of the policy L & S offered to establish coverage. . . . [¶] Had L & S offered evidence to establish that it tendered Cooper's claim to Lloyd's within the period of an operative malpractice policy and that Lloyd's specifically retained L & S, it would be entitled to its claimed attorney[] fees." On January 22, 2013, the arbitrator served the Final Award on the parties.

4. *Motion for Correction, Modification, or Reconsideration*

On January 28, 2013, L & S submitted a motion for "correction, modification and/or reconsideration" of the Final Award. The motion relied on JAMS rule 22(d), directing the arbitrator to afford the parties the opportunity to present material and relevant evidence, and JAMs rule 24(j), which provides that "[w]ithin seven calendar days after service of the [a]ward . . . , any party may . . . request that the [a]rbitrator correct" any "computational, typographical or other similar error in an [a]ward . . . ." In addition, the motion relied on "the interests of justice," as well as Code of Civil Procedure section 1008,[2] which permits a party in civil actions to renew a motion upon a showing of "new or different facts, circumstances or law."

---

[2]     All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

L & S contended that Sorrell's declaration accompanying its fee motion constituted admissible evidence that L & S had tendered the defense of Cooper's claims to Lloyd's, and that Lloyd's had retained L & S to represent itself. In addition, L & S maintained that Such's declaration contained an obvious clerical error, arguing that her clear intent was to state that L & S tendered the defense of Cooper's claims to Lloyd's in February 2012, during the effective period of the policy that L & S submitted to the arbitrator. L & S further asserted that its failure to make an adequate showing was attributable to the arbitrator's ruling on Sorrell's January 3, 2013, request for leave to submit new evidence, stating: "Had [L & S] been given an opportunity to present additional evidence . . . , there would have been no question regarding its entitlement to the requested fees." Accompanying the motion was a declaration from Such, who stated that the defense of Cooper's claims had been tendered to Lloyd's in February 2012, and a declaration from Lloyd's counsel, who stated that upon receipt of that tender, Lloyd's had retained L & S to represent itself.

Cooper opposed the motion, arguing: "[A]fter having been afforded an opportunity to present sufficient evidence, and having failed to do so, L & S [has] file[d] a shotgun motion for 'correction, modification and/or reconsideration.' This description has been used to camouflage the fact that there is no authority for the motion, [no] matter what it's called. To be sure, no JAMS rule permits it. And neither does section 1008."

In an order dated February 5, 2013, the arbitrator granted L & S's motion. In so ruling, the arbitrator determined that L & S did not request "correction" of the final award under JAMS rule 24(j), but instead sought reconsideration under section 1008, as L & S argued that it "made a typographical error" and "was not permitted to submit certain evidence." The arbitrator concluded that relief was

7

proper under section 1008, pointing to JAMS rule 24(c), which states, "The [a]rbitrator may grant any remedy or relief that is just and equitable and within the scope of the [p]arties' agreement." The arbitrator further found that L & S had made a timely tender of its defense to Lloyd's, which then retained L & S to represent itself in the arbitration proceeding.

### 5    *Revised Final Award*

On February 20, 2013, the arbitrator issued his Revised Final Award, which incorporated the Final Award, with the exception of the ruling denying L & S's fee request. In granting L & S's request for fees totaling $225,677, the arbitrator reiterated the findings stated in his February 5, 2013 order granting reconsideration.

### C.    *Proceedings Before the Trial Court*

In March 2013, L & S filed a petition to confirm the Revised Final Award. Cooper opposed the petition, and filed a petition to vacate the Revised Final Award. Cooper argued, inter alia, that the Revised Final Award contravened section 1284, which authorizes arbitrators to correct a final award when it contains an "evident miscalculation of figures" or mistaken description of a person, thing, or property, or when it is "imperfect" in form (§§ 1284, 1286.6, subds. (a), (c)). Following a hearing, the trial court granted L & S's motion. Judgment in favor of L & S and against Cooper was entered on October 4, 2013.[3]

---

[3]    We note that Cooper's notice of appeal was premature, as it was filed prior to the entry of the judgment. Neither an order confirming an arbitration award nor an order denying a petition to vacate or correct an arbitration award is appealable; such orders are reviewable only from a judgment on an order confirming the award. (*Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 326

8

**DISCUSSION**

Cooper contends the trial court improperly confirmed the award, arguing that the arbitrator had no power to (1) revise the Final Award to include an attorney fee award, or (2) grant L & S's requested attorney fees. As explained below (see pt. C., *post*), because we agree that the arbitrator exceeded his powers in issuing the Revised Final Award, we do not address Cooper's challenges to the fee award itself, which rely on the fact that L & S represented itself in the arbitration proceeding.

A. *Governing Law*

The California Arbitration Act (CAA; § 1280 et seq.) "represents a comprehensive statutory scheme regulating private arbitration in this state." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).) "The statutes set forth procedures for the enforcement of agreements to arbitrate ( . . . §§ 1281.2-1281.95), establish rules for the conduct of arbitration proceedings except as the parties otherwise agree ( . . . §§ 1282-1284.2), describe the circumstances in which arbitrators' awards may be judicially vacated, corrected, confirmed, and enforced ( . . . §§ 1285-1288.8), and specify where, when, and how court proceedings relating to arbitration matters shall occur ( . . . §§ 1290-1294.2)." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830.)

---

(*Cummings*); *Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1453-1454.)  However, because respondents have not objected to Cooper's premature notice of appeal, we find good cause to treat the notice as having been filed immediately after the October 4, 2013 judgment.  (Cal. Rules of Court, rule 8.104(e); *Stonewall Ins. Co v. City of Palos Verdes Estates* (1996) 46 Cal.App.4th 1810, 1827-1828; see *Baldwin Co. v. Rainey Construction Co.* (1991) 229 Cal.App.3d 1053, 1057, fn. 2.)

As our Supreme Court has explained, "it is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh*, *supra*, 3 Cal.4th at p. 9.)  To enforce the finality of arbitration, the CAA minimizes judicial intervention. (*Id.* at p. 10.)  Once a petition to confirm an award is filed, the superior court has only four courses of conduct:  to confirm the award, to correct and confirm it, to vacate it, or to dismiss the petition. (*Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 8 (*Law Offices*).)  The trial court is empowered to correct or vacate the award, or dismiss the petition, upon the grounds set out in the pertinent statutes; "[o]therwise courts may not interfere with arbitration awards." (*Santa Clara-San Benito etc. Elec. Contractors' Assn. v. Local Union No. 332* (1974) 40 Cal.App.3d 431, 437; see also *Moncharsh*, *supra*, at pp. 10-13.)

Under the CAA, if an award that exceeds the arbitrator's powers cannot be corrected without "affecting the merits of the decision upon the controversy submitted," the trial court must vacate the award (§ 1286.2, subd. (a)(4)); in contrast, if the award exceeds the arbitrator's powers but is subject to suitable correction, the court must correct it, unless vacation is otherwise required (§ 1286.6, subd. (b)).  Here, Cooper's petition to vacate asked the trial court to "vacate the [Revised Final A]ward in its entirety, or, in the alternative, . . . vacate the award of attorney fees in its entirety."  He contended, inter alia, that section 1284 prohibited the revision of the Final Award, and that neither law nor contract authorized the award of attorney fees.  Because Cooper's petition asserted that the attorney fee award could be vacated without affecting the other determinations in the Revised Final Award, the petition effectively offered as a potential remedy the confirmation of the Final Award, as an alternative to the vacation of the Revised Final Award. (*Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86,

10

91-96 (*Severtson*) [when arbitrator exceeded his powers in revising final award to include supplemental award of attorney fees, trial court properly confirmed original final award lacking supplemental award].)

We subject the trial court's rulings and the underlying award to different standards of review. To the extent the trial court made findings of fact in confirming the award, we affirm the findings if they are supported by substantial evidence. (*Turner v. Cox* (1961) 196 Cal.App.2d 596, 603.) To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo. (*Advanced Micro Devices, Inc. v. Intel Corp*. (1994) 9 Cal.4th 362, 376, fn. 9 (*Advanced Micro Devices*).)

We apply a highly deferential standard of review to the award itself, insofar as our inquiry encompasses the arbitrator's resolution of questions of law or fact. Because the finality of arbitration awards is rooted in the parties' agreement to bypass the judicial system, ordinarily "'[t]he merits of the controversy between the parties are not subject to judicial review.' [Citations.]" (*Moncharsh, supra*, 3 Cal.4th at pp. 10-11.)

Under this rule, courts will not review the arbitrator's reasoning or the sufficiency of the evidence supporting the award. (*Moncharsh, supra*, 3 Cal.4th at pp. 10-11.) Moreover, absent "narrow exceptions" discussed further below (see pt. C., *post*), "an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id*. at p. 11.) These exceptions do not encompass all errors that are apparent on the face of the award and cause substantial injustice. (*Id*. at p. 32.) Circumstances justifying judicial review arise when the arbitrator imposes a remedy not authorized by the arbitration agreement. (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 375; see also *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.* (2010) 187 Cal.App.4th 1405, 1416-1417 & fn. 1.)

11

B. *Section 1284*

Our focus is on section 1284, which specifies the powers of an arbitrator to correct a final award, that is, an award that resolves all the issues submitted to the arbitrator. (*Elliot & Ten Eyck Partnership v. City of Long Beach* (1997) 57 Cal.App.4th 495, 501-502 (*Elliot & Ten Eyck Partnership*); see *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1433 & fn. 29.) Generally, under the CAA, arbitrators must issue awards that "include a determination of all the questions submitted." (§ 1283.4.) To discharge that obligation, they may use "a multiple incremental or successive award process as a means, in an appropriate case, of finally deciding all submitted issues." (*Hightower v. Superior Court*, *supra*, at p. 1434, italics omitted.) Nonetheless, after the arbitrator has issued an award (or multiple incremental awards) resolving all submitted issues, section 1284 narrowly circumscribes the arbitrator's power to correct the stated resolution of those issues. (*Elliot & Ten Eyck Partnership*, *supra*, at pp. 501-502.)

Under section 1284, the arbitrator, "upon written application of a party to the arbitration, may correct the award upon any of the grounds set forth in subdivisions (a) and (c) of [s]ection 1286.6 not later than 30 days after service of a signed copy of the award on the applicant."[4] Section 1286.6. provides that the trial

---

[4]     Section 1284 states: "The arbitrators, upon written application of a party to the arbitration, may correct the award upon any of the grounds set forth in subdivisions (a) and (c) of Section 1286.6 not later than 30 days after service of a signed copy of the award on the applicant. [¶] Application for such correction shall be made not later than 10 days after service of a signed copy of the award on the applicant. Upon or before making such application, the applicant shall deliver or mail a copy of the application to all of the other parties to the arbitration. [¶] Any party to the arbitration may make written objection to such application. The objection shall be made not later than 10 days after the application is delivered or mailed to the objector. Upon or before making such objection, the objector shall deliver or mail a copy of the objection to the applicant and all the other parties to

court may correct an award if it determines that "(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;  [¶]  (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or  [¶]  (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."  Section 1284 thus provides an arbitrator fewer grounds to correct an award than section 1286.6 accords the trial court, as section 1284 does not permit the arbitrator to correct a final award that exceeded his or her powers.  (*Law Offices*, *supra*, 176 Cal.App.4th at p. 5, fn. 6; *Trabuco Highlands Community Assn. v. Head* (2002) 96 Cal.App.4th 1183, 1192 (*Trabuco Highlands Community Assn.*); *Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86 Cal.App.4th 865, 875 (*Century City Medical Plaza*).)

As explained in *Elliot & Ten Eyck Partnership*:  "It is, apparently, an ancient rule that 'when arbitrators have published their award by delivering it to the parties as the award, that it is not the subject of revision or correction by them, and that any alteration without the consent of the parties will vitiate it.' (*Porter v. Scott* (1857) 7 Cal. 312, 316.)  The briefing in the *Porter* case cited precedent back to a Yearbook of Henry VI, as well as other venerable authority.  (See also *Krautner v. Johnson* (1961) 189 Cal.App.2d 717, 718 ['A change in substance

_____

the arbitration.  [¶]  The arbitrators shall either deny the application or correct the award.  The denial of the application or the correction of the award shall be in writing and signed by the arbitrators concurring therein, and the neutral arbitrator shall serve a signed copy of such denial or correction on each party to the arbitration personally or by registered or certified mail or as provided in the agreement.  If no denial of the application or correction of the award is served within the 30-day period provided in this section, the application for correction shall be deemed denied on the last day thereof."

would require vacation of the award . . . if it resulted in prejudice to either party . . . .'].) [¶] . . . Section 1284 codifies the rule against changes in the award. Some amelioration from the stringency of the rule is provided in [the] referenced provision of section 1286.6, which allows correction of an award, but in very narrow terms." (*Elliot & Ten Eyck Partnership*, *supra*, 57 Cal.App.4th at pp. 501-502, fn. omitted.)

Under the statutory grounds for correction recognized in section 1284, "[t]he arbitrator may not reconsider the merits of the original award and make a new award under the guise of correcting the award." (*Landis v. Pinkertons, Inc.* (2004) 122 Cal.App.4th 985, 992 (*Landis*).) The statutory grounds authorize the arbitrator to correct an award after it has been issued to the parties only regarding "evident miscalculations of figures or descriptions of persons, things or property [citation] and nonsubstantive matters of form that do not affect the merits of the controversy. [Citation.]" (*Century City Medical Plaza*, *supra*, 86 Cal.App.4th at p. 877, italics omitted.) The statutory grounds, however, do not permit the arbitrator to make substantive changes to the award's determinations of fact and law. (*Law Offices*, *supra*, 176 Cal.App.4th at pp. 10-11; *Landis*, *supra*, 122 Cal.App.4th at pp. 992-993).

Section 1284 prohibits substantive amendments to final awards to include new awards of attorney fees. In *Severtson*, the arbitrator issued a final award that included a contractual attorney fee award. After the prevailing parties requested correction of the fee award, the arbitrator considered new evidence and revised the final award to include additional fees. (*Severtson*, *supra*, 173 Cal.App.3d at pp. 95-96.) When the prevailing parties sought confirmation of the revised final award, the trial court denied that request and confirmed the original final award. (*Id*. at p. 96.) Affirming the trial court's ruling, the appellate court concluded that

14

under section 1284, the original final award "could not . . . be 'corrected' to reflect the attorney[] fees . . . actually incurred because the arbitrator's estimate, whether mistaken or not, was conclusive." (*Ibid*.)

In addition to the statutory grounds for correction stated in section 1284, California courts have permitted arbitrators to amend a purported final award to include rulings on an *omitted* issue. In *A.M. Classic Construction, Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1472-1473 (*A.M. Classic Construction*), a subcontractor working on a public elementary school fell into a contract dispute with the contractor and the city employing the contractor. After the subcontractor sued the contractor and the city for damages, the matter was submitted to an arbitrator, whose decision awarded the subcontractor damages against the contractor, but did not resolve the dispute between the subcontractor and the city. (*Ibid*.) Prior to the award's confirmation, the subcontractor asked the arbitrator to amend the award to address the unresolved dispute. (*Ibid*.) The arbitrator issued an amended award, which contained a ruling in the subcontractor's favor against the city. (*Id*. at p. 1473.) After the trial court confirmed the amended award, the appellate court affirmed, concluding: "California's contractual arbitration law permits arbitrators to issue an amended award to resolve an issue omitted from the original award through the mistake, inadvertence, or excusable neglect of the arbitrator if the amendment is made before judicial confirmation of the original award, is not inconsistent with other findings on the merits of the controversy, and does not cause demonstrable prejudice to the legitimate interests of any party." (*Id*. at p. 1478.)

Following *A.M. Classic Construction*, other courts have recognized the existence of a nonstatutory amendment doctrine regarding omitted issues. (*Century City Medical Plaza, supra,* 86 Cal.App.4th at pp. 881-882 [when final

15

award fails to address prejudgment interest, costs, and attorney fees due to arbitrator's mistake, inadvertence, or excusable neglect, arbitrator may amend award to include rulings on those issues]; *Delaney v. Dahl* (2002) 99 Cal.App.4th 647, 658-660 [arbitrator properly amended award to include party's name in certain rulings].)

## C. *Revised Final Award*

We turn to whether the arbitrator exceeded his powers by revising the Final Award denying attorney fees to include the attorney fee award. At the outset, we observe that the arbitrator's revisions fall outside the nonstatutory amendment doctrine and the grounds for correction in section 1284. As explained below, the Final Award was final for purposes of that provision. In denying an award of attorney fees in the Final Award, the arbitrator found that L & S had offered insufficient evidence to demonstrate either (1) that it made a timely tender of its defense to Lloyd's under an operative policy, or (2) that Lloyd's retained L & S to represent itself. After issuing the Final Award, the arbitrator concluded that the JAMS rules permitted him to consider new evidence under section 1008, rework the findings in the original award, and issue a Revised Final Award granting the requested attorney fees. The Revised Final Award falls outside the nonstatutory amendment doctrine, as it did not address an omitted issue and, in large measure, reflected the arbitrator's response to a typographical error by L & S, rather than an error by the arbitrator. Furthermore, because the Revised Final Award purported to eliminate substantive errors in the Final Award, the arbitrator's revisions did not constitute a "correction" within the meaning of section 1284. (*Severtson*, *supra*, 173 Cal.App.3d at pp. 95-96.)

16

The key issue before us is whether the parties, by agreeing to be governed by JAMS rules, expanded the scope of the arbitrator's ability to modify a final award beyond that granted by section 1284.[5] Arbitrators ordinarily derive their powers from the parties' agreements related to arbitration, the selected rules of arbitration, and the CAA. (*Century City Medical Plaza*, *supra*, 86 Cal.App.4th at p. 874.) Here, Cooper's representation contract with L & S provided that any arbitration would be subject to the rules of JAMS or other specified arbitration rules, without expressly purporting to displace section 1284. Accordingly, the focus of our inquiry is on whether the parties' acceptance of the JAMS rules amounted to an agreement to enlarge the limited grounds for correction in section 1284. As explained below, the JAMS rules do not purport to effectuate any such modification to section 1284.[6]

---

[5]    L & S suggests that Cooper forfeited his challenge to the arbitrator's reconsideration of the Final Award because he did not expressly refer to section 1284 in opposing L & S's motion for reconsideration. We disagree. Generally, a party may forfeit a contention that the arbitrator exceeded his or her powers by "'deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.'" (*Porter v. Golden Eagle Ins. Co.* (1996) 43 Cal.App.4th 1282, 1291, quoting *Lindsay–Strathmore I. Dist. v. Superior Ct.* (1920) 182 Cal. 315, 338 (conc. opn. of Onley, J.).) In our view, no such forfeiture occurred here, as Cooper opposed L & S's motion on broad grounds sufficient to encompass section 1284, arguing that "there is *no* authority for the motion, [no] matter what it's called." (Italics added.) (See *Pacific Crown Distributors v. Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138, 1144-1146 [party did not forfeit challenge to arbitrator's belated decision to address issue not raised at evidentiary hearing, notwithstanding party's failure to assert express objection, because party manifestly did not agree to submit the issue to the arbitrator].)

[6]    We recognize that although many provisions of the CAA are subject to modification by the parties, certain provisions establish nonmodifiable structural

Generally, an arbitrator's determinations are subject to a highly deferential standard of review. When, as here, the arbitrator is empowered to grant any remedy that is "just and equitable," the arbitrator ordinarily "enjoy[s] the authority to fashion relief [he or she] consider[s] just and fair . . . , so long as the remedy may be rationally derived from the contract and the breach." (*Advanced Micro Devices, supra,* 9 Cal.4th at p. 383; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1448 (*Greenspan*).) Nonetheless, that deferential standard of review is applicable only "in the absence of more specific restrictions in the arbitration agreement, the submission or the *rules of arbitration*." (*Advanced Micro Devices, supra,* at p. 367, italics added; *California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, 953. )

---

aspects of the arbitration process. (*Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1166-1167.) The CAA contains procedural provisions specifying the appointment of the arbitrator (§ 1281.6), the manner in which panels of arbitrators may make decisions (§ 1282), the conduct of the arbitration proceedings (1282.2), and the timing of the final award (§ 1283.8). Each provision states that the pertinent procedures may be established or modified by the parties' agreement. In view of those provisions, parties have considerable latitude to devise their own arbitration procedures (*Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1106-1107), and may, for example, provide for a second level of review within the arbitration of an aribtrator's "initial" award (see *Cummings*, *supra*, 128 Cal.App.4th at pp. 326-332 & fns. 9 & 10). In contrast, the binding nature of arbitration awards subject to confirmation and the requirement of arbitrator neutrality are nonmodifiable structural aspects of the CAA. (*Trabuco Highlands Community Assn.*, *supra*, 96 Cal.App.4th at p. 1190; *Azteca Construction v. ADR Consulting, Inc.*, *supra*, at p. 1168.) In concluding that the parties, in agreeing to arbitration under the JAMS rules, did not attempt to modify section 1284 to permit substantive revisions of an award that was final for purposes of that statute, we do not address whether section 1284 is potentially subject to modification.

Here, the JAMS rules contain a specific restriction precluding reconsideration and revision of a final award. JAMS rule 4 states in pertinent part: "If any of these Rules . . . is *determined* to be in *conflict with a provision of applicable law*, the provision of law will *govern over* the Rule in conflict . . . ." (Italics added.) Because JAMS rule 4 gives precedence to laws "applicable" to arbitration in cases of conflict, it manifests a clear intent to confine the operation of the JAMS rules within the limits set by the governing arbitration laws. In view of JAMS rule 4, we conclude the JAMS rules do not authorize arbitrators to make rulings that contravene section 1284. (See *California Faculty Assn. v. Superior Court*, *supra*, 63 Cal.App.4th at p. 953 [arbitrator exceeded his powers by disregarding specific restrictions on those powers in the parties' agreement].)

L & S suggests that because JAMS rule 24(c) empowered the arbitrator to render relief on the basis of principles of justice and equity, the arbitrator necessarily had the authority to reconsider and revise the Final Award and to incorporate section 1008, notwithstanding section 1284. We disagree. In our view, JAMS rule 24(c), by itself, is insufficient to render the arbitrator's decision to revise the Final Award "rationally derived from the contract." (*Advanced Micro Devices, supra,* 9 Cal.4th at p. 383.) As our Supreme Court has observed, historically, arbitrators have been routinely empowered to render decisions on the basis of principles of equity and justice. (*Moncharsh*, *supra*, 3 Cal.4th at p. 14; *Advanced Micro Devices, Inc.*, *supra*, 9 Cal.4th at pp. 374-375.) To hold that arbitrators so empowered may disregard section 1284 whenever they believe it equitable and just to do so would amount to abrogating that provision in the typical arbitration. We decline to conclude that the Legislature enacted section 1284 with the intent that it would be a nullity.

19

L & S's reliance on *Glass, Molders, Pottery, Plastics & Allied Workers Int'l. Union v. Excelsior Foundry Co.* (7th Cir. 1995) 56 F.3d 844 and *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.* (2d Cir. 2010) 592 F.3d 329, is misplaced, as those decisions addressed statutory schemes other than the CAA.[7] In the first case, the federal court concluded that the governing statutory scheme permitted the arbitrator to resolve an issue not clearly decided in the original final award. (*Glass, Molders, Pottery, Plastics & Allied Workers Int'l. Union v. Excelsior Foundry Co.*, *supra*, at pp. 846-849 [under Illinois arbitration law, arbitrator was permitted to resolve issue not definitively addressed in final award].) In the second case, the federal court determined that under the governing statutory scheme, the parties had, in fact, empowered the arbitrator to make substantive revisions in a final award. (*T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, *supra*, at pp. 342-347 [within context of the Federal Arbitration Act (9 U.S.C. § 1 et seq.), parties had structured their arbitration proceeding to allow arbitrator to revise final award].) As explained above, those circumstances are not present here: the Revised Final Award did not resolve an omitted issue, and the JAMS rules do not purport to enlarge the grounds for correction stated in section 1284.

L & S further contends that the Final Award was not a final award for purposes of section 1284. JAMS rule 24(j) provides that "[w]ithin seven . . . calendar days after service of [the] [a]ward . . . , any [p]arty may . . . request that the [a]rbitrator correct any computational, typographical or other

---

[7]     L & S also relies on a treatise (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (Rutter Group 2013) [¶] 5:416.7, pp. 5-285-286). However, as the cited portions of the treatise merely describe cases we examine below, they offer no independent support for L & S's contentions.

similar error in an [a]ward . . . ." JAMS rule 24(k) further provides that an award "is considered final[] for purposes of . . . a judicial proceeding to enforce, modify or vacate the [a]ward . . . fourteen . . . calendar days after service is deemed effective if no request for a correction is made, or as of the effective date of service of a corrected [a]ward." In view of those rules, L & S argues that the Final Award "was not final under [the] JAMS rules prior to [the] request for reconsideration."

We reject L & S's contention, as it conflates the finality of an award for purposes of correction by the arbitrator under section 1284 with the finality of an award for purposes of confirmation, correction, or vacation by a court. Under the CAA, when a final award is issued, the arbitrator retains jurisdiction to correct it under section 1284 for a 30-day period (*Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1105); after that period, the trial court acquires jurisdiction over the award to confirm, correct, or vacate it (*Landis*, *supra*, 122 Cal.App.4th at p. 991). Nothing in the JAMS rules or the record suggests that the Final Award was not final for purposes of correction under section 1284. The JAMS rules specify only the date upon which the award becomes final for purposes of proceedings in the trial court. Furthermore, the arbitrator expressly identified the Final Award as his "Final Award"; it was in writing and was served on the parties; it resolved all the issues reserved in the Interim Award, including the questions related to attorney fees and costs; and it included determinations on all the issues submitted in the arbitration. Not even in ruling that the Final Award was subject to reconsideration did the arbitrator suggest that it was merely an Interim Award. The Final Award was therefore subject to section 1284. (*Allstate Ins. Co. v. Superior Court* (2006) 142 Cal.App.4th 356, 362; §§ 1283.4, 1283.6.)

21

L & S also maintains that in accepting arbitration governed by the JAMS rules, Cooper waived his right to judicial review of the arbitrator's determination that the Final Award was subject to reconsideration and revision. L & S relies on JAMS Rule 11(a), which provides: "Once appointed, the [a]rbitrator shall resolve disputes about the interpretation and applicability of these [r]ules and [the] conduct of the [a]rbitration [h]earing. The resolution of the [dispute] by the [a]rbitrator shall be final." We disagree that Cooper's acceptance of the JAMS rules constituted such a waiver.

Although parties may waive their rights to judicial review of an arbitration award, any such waiver must be "clear and express." (*Reisman v. Shahverdian* (1984) 153 Cal.App.3d 1074, 1088-1089 (*Reisman*); see *Pratt v. Gursey, Schneider & Co.* (2000) 80 Cal.App.4th 1105, 1108 ["A party may expressly waive the right to appeal from any judgment."].) In *Reisman*, *supra*, 153 Cal.App.3d at page 1082, an attorney and his former clients fell into a dispute regarding the attorney's fees. To resolve the dispute, they elected binding arbitration and completed a form agreement that stated: "'[Y]ou . . . may agree to make the arbitration *binding*, which means that once the arbitrators have rendered an award, *no appeal or further proceeding will be possible*.'" (*Id*. at p. 1082, second italics added.) The arbitrators rendered an award in favor of the attorney, which was confirmed. (*Id*. at pp. 1083-1084.) After the clients noticed an appeal from the judgment and related rulings, the attorney contended that the waiver provision of the arbitration agreement mandated dismissal of the appeal. (*Id*. at p. 1088.) In rejecting that contention, the appellate court concluded that the waiver provision was insufficient to alert the parties that "waiving 'appeal' . . . included review of judicial action regarding an award as distinguished from the actions of the arbitrators." (*Id.* at pp. 1088-1089.)

We too find no "clear and express" waiver by Cooper of judicial review (*Reisman*, *supra*, 153 Cal.App.3d at p. 1088). As explained above, JAMS rule 4 manifests a clear intent to confine the operation of the JAMS rules within the boundaries set forth in the governing arbitration laws. Furthermore, because JAMS rule 4 provides for "determinations" regarding conflicts between the rules and the CAA, it is reasonably understood to permit courts, as well as arbitrators, to make those determinations. Accordingly, viewed in context, JAMS rule 11(a) did not alert Cooper that by accepting arbitration under the JAMS rules, he would be waiving his right to challenge the arbitrator's determination that the Final Award was subject to reconsideration and revision.

*Greenspan, supra,* 185 Cal.App.4th 1413, upon which L & S relies, is distinguishable, as that decision addressed an arbitrator's application of the JAMS rules implicating no provision of the CAA. There, the arbitrator determined that under the JAMS rules, he was permitted to issue a final award more than 30 days after issuing an Interim Award. (*Id.* at pp. 1449-1456.) Pointing to JAMS rule 11(a), the appellate court concluded that the arbitrator's application of the JAMS rules was binding on the parties, and thus beyond judicial review. (*Id.* at p. 1455.) The appellate court nonetheless recognized the limited reach of JAMS rule 11(a), as it afforded no such deference to another determination by the arbitrator under the JAMS rules that implicated a key provision of the CAA, namely, that he was not subject to disqualification for want of neutrality. (*Id.* at pp. 1456-1461.)[8]

---

[8] In a supplemental brief invited by this court, L & S contends the arbitrator was required to reconsider the denial of its request for an award of attorney fees. L & S relies on subdivision (a)(5) of section 1286.2, which states that the trial court shall vacate an arbitration award if it determines that "[t]he rights of the party were substantially prejudiced . . . by the refusal of the arbitrator[] to hear evidence material to the controversy." In view of that provision, L & S argues that

23

Pointing to *DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809 (*DiMarco*), L & S suggests that even if the arbitrator lacked the authority to revise the Final Award to include an attorney fee award, the denial of the fee award in the Final Award *itself* exceeded the arbitrator's powers, and thus required correction by the trial court, as the arbitrator found that L & S was the prevailing party. As explained below, we disagree.

In *DiMarco*, an individual entered into an agreement to purchase real property from its owner. (*DiMarco*, *supra,* 31 Cal.App.4th at p. 1812.) The agreement contained an arbitration clause, and also provided that in case of a dispute, the prevailing party was entitled to recover attorney fees. (*Id*. at pp. 1812, 1815.) After the purchaser sought to rescind the agreement, an arbitrator found the property owner to be the prevailing party, but declined to award her attorney fees, stating only that he had the discretion to do so. (*Id*. at p. 1812.) The trial court subsequently corrected the arbitration award to include the property owner's attorney fees. (*Id*. at p. 1813.) In affirming that ruling, the appellate court concluded that the arbitrator had exceeded his authority under the agreement, which mandated a fee award. (*Id*. at p. 1815.)

Following *DiMarco*, our Supreme Court clarified the circumstances in which an arbitrator may deny the prevailing party a contractual fee award without exceeding his authority. In *Moshonov v. Walsh* (2000) 22 Cal.4th 771, 774-775, the arbitrator denied the prevailing parties' fee requests, concluding that the

---

"had the [a]rbitrator failed to allow [L & S] to present evidence to correct the errors in its initial submission and present evidence on the issue of its retainer by Lloyd's, [L & S] would have grounds to vacate the [Final Award]." We disagree. As our Supreme Court has explained, subdivision (a)(5) of section 1286.2 does not oblige the arbitrator to "reopen" the presentation of evidence to consider new evidence. (*Grunwald-Marx, Inc. v. L. A. Joint Board* (1959) 52 Cal.2d 568, 587.)

contractual fee provision was insufficiently broad to encompass their claims, which sounded in tort. Noting that arbitrators do not exceed their powers "merely by rendering an erroneous decision on a legal or factual issue" submitted in the arbitration, the Supreme Court concluded that the arbitrator's ruling did not exceed his powers, as it was based on his interpretation of the scope of the fee provision. (*Id*. at p. 775.) The court distinguished *DiMarco*, noting that in that case, the appellate court "found no interpretation of the fees clause, express or implied in the arbitrator's decision," that purported to support the denial of the fee award. (*Id*. at p. 779.)

Here, the arbitrator's denial of a fee award in the Final Award falls under *Moshonov*, not *DiMarco,* as it was predicated on substantive determinations of law and fact regarding issues submitted in the arbitration. The arbitrator determined (1) that even though L & S had represented itself in the arbitration, it was entitled to a fee award upon a demonstration of certain facts, and (2) that L & S had failed to produce evidence to establish those facts. As explained in *Moshonov*, those determinations of law and fact, erroneous or not, do not exceed the arbitrator's powers. In sum, the trial court erred in denying Cooper's petition to vacate the fee award contained in the Revised Final Award.[9]

## DISPOSITION

The judgment is reversed, and the matter is remanded with directions to the trial court to vacate the judgment confirming the Revised Final Award, and enter a

---

[9]      As we find the arbitrator's original determination of L & S's entitlement to attorney fees in the Final Award was not subject to modification, we do not address the correctness of the revised determination.

25

new judgment confirming the Final Award dated January16, 2013.  Cooper is awarded his costs on appeal.

**CERTIFIED FOR PUBLICATION.**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

26