Filed 1/24/24 Raziel v. Extended Vision CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| EYAL RAZIEL,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EXTENDED VISION, LLC et al.,<br><br>    Defendants and Appellants. | B323008<br><br>(Los Angeles County<br>Super. Ct. No. 20STCP01873) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Armen Tamzarian, Judge. Affirmed.

Catanzarite Law Corporation and Kenneth J. Catanzarite for Defendants and Appellants.

Levinson Arshonsky Kurtz & Komsky, Robert A. Levinson, and Nathan T. Lowery for Petitioner and Respondent.

Eyal Raziel (Raziel) is a member of Extended Vision, LLC. Farhad Eliasi (Eliasi) and Elad Benisti (Benisti) are managing members. (We will refer to Extended Vision, LLC, Eliasi, and Benisti collectively as Extended Vision.) When Raziel filed a petition to compel inspection of Extended Vision's books and records, Extended Vision moved to compel arbitration. The arbitrator issued an award in favor of Raziel, which the trial court confirmed. We are asked to decide whether the trial court should have vacated the award because the arbitrator purportedly erred in finding Extended Vision waived its right to a hearing.

## I. BACKGROUND

### A. *The Underlying Dispute and Referral to Arbitration*

Extended Vision was formed in 2008 to operate a restaurant in Santa Monica. Raziel, Eliasi, and Benisti's initial capital contributions gave them 9.5 percent, 40.5 percent, and 25 percent membership interests in the company, respectively. As of 2019, documents on file with the California Secretary of State indicated Eliasi and Benisti were the company's managers.

After formation of the company, a dispute arose concerning Raziel's employment classification. Eliasi and Benisti claim they made Raziel a manager, while Raziel contends he is not a manager and works in the restaurant as a non-exempt employee. Believing Extended Vision may be liable for wage and hour violations (not just as to him, but also as to other employees), Raziel demanded to inspect Extended Vision's books and records pursuant to his statutory and contractual rights as a member of the company and "to evaluate the scope and extent of Extended

2

Vision's liability . . . ." Extended Vision allegedly failed to cooperate.

Raziel then filed a petition for writ of mandate in the trial court to compel inspection and copying of the company's books and records.[1]  The trial court granted Extended Vision's motion to compel arbitration of the dispute pursuant to the company's operating agreement.[2]

### B.     The Arbitration

Raziel filed a demand for arbitration with the American Arbitration Association (AAA) and Extended Vision filed an answering statement.[3]  In May 2021, Gayle L. Eskridge was appointed to serve as the arbitrator.

Raziel filed a motion challenging the jurisdiction of the arbitrator and the AAA, which the arbitrator denied on September 13, 2021.  In the final section of the order denying Raziel's challenge to her jurisdiction, the arbitrator set forth

---

[1]     A few days prior to filing his petition for writ of mandate, Raziel filed a complaint against Extended Vision alleging failure to pay minimum wages, failure to pay overtime wages, failure to provide meal periods, failure to provide rest breaks, failure to provide itemized wage statements, retaliation, and unfair business practices.

[2]     This Court denied Raziel's petition for a writ of mandate directing the trial court to vacate its order granting Extended Vision's motion to compel arbitration, and our Supreme Court denied Raziel's petition for review.

[3]     Neither the demand for arbitration nor the answering statement is included in the appellate record.

"INSTRUCTIONS GOING FORWARD."  The parties were ordered to state their availability for an arbitration management conference to be held later in September 2021 to discuss, among other things, "[w]hat, if any, further briefing should be had prior to the [a]rbitrator ruling on [Raziel's] petition . . . ."

A telephonic arbitration management conference was held on September 24, 2021.  Consistent with earlier instructions, and as memorialized in the arbitrator's "ARBITRATION MANAGEMENT ORDER NO. 2" (Order No. 2) issued immediately after the conference, "[t]he purpose of th[e] arbitration management conference was to discuss" issues including "(1) [w]hat, if any, further briefing should be had prior to the [a]rbitrator ruling on [Raziel's] [p]etition for [w]rit of [m]andate" and "(2) [i]f further briefing is to be had, the schedule for same . . . ."  As further documented in Order No. 2, "[t]he parties agreed no further briefing was needed prior to the [a]rbitrator ruling on [Raziel's] [p]etition for [w]rit of [m]andate. [¶]  The [a]rbitrator will rule on the [p]etition for [w]rit of [m]andate as soon as possible, but certainly by October 15, 2021."  Order No. 2 was electronically served on all counsel of record the same day.

Just shy of a week later, the arbitrator issued a written order granting Raziel's petition for writ of mandate and requiring Extended Vision to make certain records available for inspection and copying.  The arbitrator found Raziel had a right to inspect certain documents pursuant to statute and the company's operating agreement and the arbitrator noted that although Extended Vision had "filed an [a]nswering [s]tatement which included 37 separate affirmative defenses," it did not address Raziel's statutory rights.

4

The day after the arbitrator issued the order granting Raziel's petition, one of Extended Vision's attorneys sent an email to the arbitrator, counsel for Raziel, and others stating Extended Vision "did not realize this issue [i.e., the merits of Raziel's petition] was under consideration yet" and "request[ing] this matter be briefed before [the] ruling goes into effect." Extended Vision asserted the waiver of further briefing at the September 24, 2021, arbitration management conference "had to do with the jurisdiction-related issues." As Extended Vision argued it, "there was no reference to consideration of the merits of [Raziel's] petition, and [Extended Vision] certainly did not knowingly or intentionally waive its right to further briefing thereon."

The arbitrator construed the email from Extended Vision's attorney as a motion to re-open or reconsider the matter. In a written order denying the motion, the arbitrator found Extended Vision's purported belief that its waiver related only to further briefing of jurisdictional issues "ma[de] no sense" because she denied Raziel's motion challenging her jurisdiction more than a week before the September 24, 2021, arbitration management conference. Extended Vision "could not possibly have believed the issue of briefing was related to the [m]otion to [c]hallenge [a]rbitrator's [j]urisdiction," and its protest to the contrary was "disingenuous." Extended Vision, the arbitrator reasoned, was "on notice regarding what was planned to be discussed, and then participated in the telephonic conference in which they clearly stated they did not need to do any further briefing regarding the [p]etition for [w]rit of [m]andate. As if that was not sufficient, the [a]rbitrator issued [Order No. 2] which specifically stated that the parties had agreed no further briefing on the [p]etition for

5

[w]rit of [m]andate was required, and that the [a]rbitrator would be issuing her ruling on the [p]etition for [w]rit of [m]andate by October 15, 2021."

Over the next several months, the arbitrator issued further orders addressing issues including, among other things, Extended Vision's compliance with the order granting Raziel's petition.

In May 2022, the arbitrator issued a final award that included a summary of its previous orders. With respect to the waiver issue, the arbitrator again emphasized Extended Vision "could not have believed the issue of briefing" discussed at the September 24, 2021, arbitration management conference "was related to [Raziel's] [m]otion to [c]hallenge [the] [a]rbitrator's [j]urisdiction" because she had already denied Raziel's jurisdictional challenge. Moreover, Extended Vision "had been on notice regarding what was planned to be discussed, and then participated in the telephonic conference in which they clearly stated they did not need to do any further briefing regarding the [p]etition for [w]rit of [m]andate." And "Order No. 2 specifically stated that the parties had agreed no further briefing on the [p]etition for [w]rit of [m]andate was required . . . ."

The final award indicated Extended Vision complied with the arbitrator's order granting Raziel's petition and awarded Raziel $100,290.66 in attorney fees and costs.

C.   *The Trial Court's Judgment Confirming the Award*

Raziel petitioned the trial court to confirm the arbitrator's award, and Extended Vision responded with a request to vacate the award. Extended Vision argued the arbitrator exceeded her powers and it was prejudiced by the arbitrator's purported

6

misconduct, including her refusal to hear material evidence. Extended Vision's position rested on the contention that Extended Vision did not waive its right to a hearing on the merits of Raziel's petition. Extended Vision disputed the arbitrator's recollection of the September 24, 2021, arbitration management conference and argued that only an express, written waiver would be sufficient to waive a hearing in arbitration.

The trial court rejected Extended Vision's arguments and confirmed the award. With respect to the contention that the waiver of a hearing must be in writing, the trial court concluded there was no authority supporting Extended Vision's position. The trial court also found, alternatively, that even if the arbitrator had committed legal error, a legally erroneous ruling by the arbitrator would still be binding on the parties.

As to the argument that there was no waiver—written or otherwise—the trial court reasoned "[v]acating this award . . . would require disturbing the arbitrator's factual findings," which "[t]he court has no authority to do . . . ." Alternatively, the trial court determined that "[e]ven if the court had the authority to disregard the arbitrator's findings of fact, it would not do so" because "the record shows the arbitrator gave [Extended Vision] th[e] opportunity" to be heard on the merits of Raziel's petition, "and they declined." The trial court "agree[d] with the arbitrator's conclusion" that Extended Vision's purported belief the waiver was limited to further briefing on Raziel's jurisdictional challenge was "disingenuous." The trial court cited Order No. 2 and found "[t]he only reasonable inference [was] that the arbitrator planned on ruling on the briefs as soon [sic] and no later than October 15, 2021. [Extended Vision] knew that and still did not request a hearing."

7

With respect to Extended Vision's argument that it was prejudiced by the arbitrator's decision to proceed without a hearing on the merits, the trial court explained that Extended Vision "make[s] no offer or proof as to what evidence, if any, they would have presented that could have resulted in a different outcome . . . . This is unsurprising because deciding such a petition requires little evidence and all the material facts were before the arbitrator."

The trial court awarded Raziel an additional $10,676.65 in expenses associated with the petition to confirm the award plus $1,016.07 in interest accrued on the arbitrator's award. The judgment awarded Raziel a total of $90,600.22.[4]

## II. DISCUSSION

Extended Vision contends the judgment must be reversed and the arbitration award vacated because they legally could not, and factually did not, waive their right to a hearing on the merits during the September 24, 2021, arbitration management conference. These contentions are meritless. Neither the California Arbitration Act nor the applicable AAA rules require a hearing when the parties are content to rest on the pleadings, and waiver of a hearing need not take any particular form. Substantial evidence (indeed, evidence we would find persuasive even reviewing the matter de novo) supports the trial court's determination that Extended Vision agreed to forgo a hearing during the arbitration management conference.

---

[4] The trial court's judgment, based on a proposed judgment submitted by Raziel, omits $21,383.16 in costs awarded by the arbitrator. Raziel took no appeal from the judgment.

8

*A.     Legal Framework and Standard of Review*

"'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.'" (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916, quoting *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10.) Accordingly, "[t]he California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the Federal Arbitration Act (9 U.S.C. § 10 et seq.) provide limited grounds for judicial review of an arbitration award." (*Ibid.*)

This appeal concerns three grounds for vacating an arbitration award set forth in Code of Civil Procedure section 1286.2.[5]  Among other things, and subject to exceptions, the trial court "shall" vacate an award if (1) "[t]he arbitrator[ ] exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted" (§ 1286.2, subd. (a)(4)), (2) "[t]he rights of [a] party were substantially prejudiced by misconduct of a neutral arbitrator" (§ 1286.2, subd. (a)(3)), or (3) "[t]he rights of [a] party were substantially prejudiced . . . by the refusal of the arbitrator[ ] to hear evidence material to the controversy or by other conduct of the arbitrator[ ] contrary to the provisions of [the California Arbitration Act]" (§ 1286.2, subd. (a)(5)).

"Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of

---

[5]     Undesignated statutory references that follow are to the Code of Civil Procedure.

9

the award or cause substantial injustice to the parties." (*Richey*, *supra*, 60 Cal.4th at 916, citing *Moncharsh*, *supra*, 3 Cal.4th at 6, 28.) "To the extent the trial court made findings of fact in confirming the award, we affirm the findings if they are supported by substantial evidence." (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11-12.)

### B. Extended Vision's Right to a Hearing on the Merits of Raziel's Petition Is Subject to Waiver

We will assume for argument's sake that the arbitrator's legal determination that Extended Vision could waive its right to a hearing is within the permissible scope of our review. Even so, Extended Vision's contention that a right to a hearing is either unwaivable—or at least not subject to an oral waiver—rests only on the California Arbitration Act and the AAA rules. As we shall explain, neither provides support for Extended Vision's position. To the contrary, requiring a hearing that neither party desires would undermine several key advantages of arbitration, including "'its informality,'" "'lower costs, [and] greater efficiency and speed . . . .'" (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1138, quoting *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 348.)

### 1. The California Arbitration Act

Extended Vision cites section 1282.2, subdivision (d) for the proposition that its right to a hearing in arbitration is not subject to waiver. Section 1282.2 provides that, "[u]nless the arbitration agreement otherwise provides, or unless the parties to the arbitration otherwise provide by an agreement which is not contrary to the arbitration agreement as made or as modified by

all the parties thereto: [¶] . . . [¶] (d) The parties to the arbitration are entitled to be heard, to present evidence and to cross-examine witnesses appearing at the hearing, but rules of evidence and rules of judicial procedure need not be observed. On request of any party to the arbitration, the testimony of witnesses shall be given under oath."

Focusing only on the "entitled to be heard" language in subdivision (d), Extended Vision does not grapple with the opening sentence of section 1282.2 that makes the entitlement to be heard subject to an agreement by the parties otherwise. Here, the arbitrator determined the parties reached such an agreement at the September 24, 2021, arbitration management conference, and nothing in the statute requires the agreement to be in writing. The agreement to forgo a hearing that was documented by the arbitrator also is not contrary to the parties' overarching arbitration agreement. Section 1282.2 is therefore no help to Extended Vision.

### 2. *The AAA rules*

On our own motion, we take judicial notice of the arbitration rules in effect during the arbitration. (AAA Commercial Arbitration Rules and Mediation Procedures (eff. Oct. 1, 2013), available at https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf [as of Oct. 12, 2023]; Evid. Code, §§ 452, subd. (h), 459, subd. (a).)

Although Rules R-32 and R-45 expressly contemplate the waiver of a hearing,[6] Extended Vision relies on Rules R-24, R-

---

[6] Rule R-32(d) provides "[t]he parties may agree to waive oral hearings in any case," and R-45 provides "[t]he award shall be

11

32(d), R-34(a), and R-39(a) to argue a hearing is nonetheless required.[7]  None of these rules is amenable to Extended Vision's reading, however.

Rule R-24 provides "[t]he arbitrator shall set the date, time, and place for each hearing.  The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule.  The AAA shall send a notice of hearing to the parties at least 10 calendar days in advance of the hearing date, unless otherwise agreed by the parties."  Nothing in this rule indicates the parties cannot waive their right to a hearing.  The rule merely sets forth procedures to follow *if* a hearing is to be held.

Extended Vision suggests Rule R-32 supports its position even though the rule actually provides "[t]he parties may agree to waive oral hearings in any case."  Extended Vision points to other language in Rule R-32 that states the parties "may also agree to utilize the Procedures for Resolution of Disputes Through Document Submission, found in Rule E-6" and believes this means there can be no waiver absent an agreement to utilize Rule E-6 procedures.  But that just misreads the rule.  Under

---

made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, *if oral hearings have been waived*, from the due date set for receipt of the parties' final statements and proofs."  (Emphasis added.)

[7]    For the first time on appeal, Extended Vision argues the arbitrator was required to "re-open" the hearing upon request pursuant to Rule R-40.  This argument is forfeited.

Rule R-32, the parties need not, but "*may also,*" agree to use Rule E-6 procedures. Rule E-6 itself is similarly couched in permissive language: "Where cases are resolved by submission of documents, the following procedures *may* be utilized at the agreement of the parties or the *discretion* of the arbitrator." (Emphasis added.) The text of the rule accordingly does not support the view that waivers are only authorized when Rule E-6 procedures are used.

Rule R-34(a) provides "[t]he parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default, or has waived the right to be present." Again, nothing in this rule suggests the right to present certain evidence cannot be waived.

Rule R-39 is entitled "Closing of Hearing." Rule R-39(a) provides "[t]he arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed." Even if this rule applies in contexts other than closing a hearing, there is no indication that the parties' replies must be in writing. Indeed, the rule does not even require affirmations by the parties that there are no "further proofs" or witnesses at all; it states an arbitrator may close the hearing regardless if "satisfied that the record is complete."

13

C. *The Trial Court's Waiver Finding Is Supported by*
*Substantial Evidence*

Assuming for the sake of argument, again, that the
arbitrator's waiver finding here is not entitled to the deference
afforded findings on the merits, the trial court's judgment
confirming the award is nevertheless subject to substantial
evidence review. Extended Vision's argument that the de novo
standard applies because "the predicate facts are not in dispute"
mistakenly assumes the salient facts relate to the bare denial of
their right to brief and be heard on the merits—as opposed to
what was discussed during the September 24, 2021, arbitration
management conference. Substantial evidence supports the trial
court's determination that Extended Vision waived its rights to
brief and be heard on the merits of Raziel's petition, choosing
instead to rest on its answer to Raziel's demand for arbitration.

Both the arbitrator and the trial court found Extended
Vision's purported belief that the discussion of further briefing
during the arbitration management concerned only Raziel's
jurisdictional challenge to be meritless to the point of being
disingenuous. That finding has ample support. The arbitrator
denied Raziel's jurisdictional challenge more than a week before
the arbitration management conference, and Extended Vision
never explains why further briefing on this issue would have
been up for discussion. Indeed, the arbitrator's order denying
Raziel's jurisdictional challenge and proposing the arbitration
management conference was clear that the discussion would
address the need for briefing on the merits of Raziel's petition.
Order No. 2, issued immediately after the arbitration
management conference, confirmed the parties' agreement "that
no further briefing was needed prior to the [a]rbitrator ruling on

14

[Raziel's] [p]etition for [w]rit of [m]andate." In response to Extended Vision's motion to re-open the proceedings, the arbitrator emphasized Extended Vision "clearly stated [it] did not need to do any further briefing regarding the [p]etition for [w]rit of [m]andate."

In an effort to argue the contrary, Extended Vision points to a declaration from one of its attorneys, Scott M. Nenni (Nenni), that discusses the September 24, 2021, arbitration management conference and a minute order from a status conference held in the trial court on September 29, 2021—i.e., between the arbitration management conference and issuance of the arbitrator's order granting Raziel's petition.[8] Nenni avers that he understood the discussion of waiver at the arbitration management conference to concern Raziel's jurisdictional challenge. But he does not address the orders issued before and after the conference indicating the discussion was focused on the need for briefing on the merits of Raziel's petition. Nor does he explain why briefing of the already-decided jurisdictional challenge remained a live issue. The minute order, which states "[c]ounsel represent to the court that arbitration is ongoing and the arbitrator is evaluating whether or not he/she has jurisdiction to arbitrate the case," likewise fails to shed any light on why the parties would have believed this given the arbitrator's orders indicating this issue had already been resolved and her ruling on the merits was imminent.[9]

---

[8]     The same judge presided at the September 29, 2021, status conference and entered judgment confirming the arbitration award.

[9]     Regardless, the trial court was entitled to decline to credit Extended Vision's evidence (*In re Alexandria P.* (2016) 1

15

Extended Vision further contends that even if it waived its right to *brief* the merits of Raziel's petition, this waiver cannot be construed as a waiver of its right to a hearing. Again, Extended Vision fails to account for the arbitrator's orders. Order No. 2 indicates "no further briefing was needed prior to the [a]rbitrator *ruling* on [Raziel's] [p]etition" (emphasis added), not that no further briefing was needed prior to a *hearing* on the petition. Moreover, the order emphasizes the arbitrator was to rule on the petition "as soon as possible," with no mention of a hearing to be held in the interim. This is substantial evidence that Extended Vision waived both briefing and a hearing on the merits of Raziel's petition.

---

Cal.App.5th 331, 354), and, on appeal, we would defer to such a decision.

16

DISPOSITION

The judgment is affirmed.  Raziel is awarded costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


KIM, J.