See Dissenting Opinion

Filed 12/9/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| E-COMMERCE LIGHTING, INC., et al., | |
| Plaintiffs and Appellants, | E074525 |
| v. | (Super.Ct.No. PSC1701019) |
| E-COMMERCE TRADE LLC, | OPINION |
| Defendant and Respondent; | |
| BANC OF CALIFORNIA, NATIONAL ASSOCIATION, | |
| Intervener and Respondent. | |

APPEAL from the Superior Court of Riverside County. David M. Chapman, Judge. Reversed.

Best Best & Krieger, Howard B. Golds, Thomas M. O'Connell, Sunny H. Huynh Christina M. Morgan, Adam P. Smith and Victor L. Wolf for Plaintiffs and Appellants.

The Daley Law Firm, Darrell Daley; Slovak Baron Empey Murphy & Pinkney and Brent S. Clemmer for Defendant and Respondent.

Buchalter, Robert S. McWhorter and Jacqueline N. Vu for Intervener and Respondent.

An arbitrator determined that a borrower and lender were liable to each other for similar amounts, each roughly two and a half million dollars.  He then offset the awards against each other, resolving the disputed issue of whether a setoff was proper.

A bank, however, had also lent money to the borrower.  That bank, not a party to the arbitration, believed that the setoff effectively circumvented the agreement among it, the borrower, and the other lender that the bank's loan had priority and would be paid back first.  Instead of being offset against the other lender's award, the bank believed, the borrower's award should go toward satisfying the bank's loan.  It thus convinced the trial court to correct the arbitrator's award by eliminating the setoff.

Per statute, the trial court could correct the award only "without affecting the merits of the decision upon the controversy submitted."  (Code Civ. Proc., § 1286.6, subd. (b).)  This helps ensure that a party cannot use a petition to correct an arbitration award as an appeal of an arbitrator's considered decision.  We hold that, on the facts presented, the correction affected the merits of the arbitrator's decision.  Accordingly, the correction was improper, and we reverse.[1]

BACKGROUND

Frank Halcovich started E-Commerce Lighting, Inc (ECL) in 2013 to sell lighting equipment on the internet.  In 2015, E-Commerce Trade LLC (Trade) purchased ECL's assets for $11.5 million.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

Trade obtained three loans when purchasing the assets. It borrowed $2.5 million of the purchase price from ECL under a promissory note. It also obtained two loans from Banc of California, National Association (the Bank), one for $5 million and the other for approximately $1.25 million. Trade, ECL, and the Bank also entered into a subordination agreement whereby ECL's promissory note would be subordinated to the Bank's loans.

In 2017, ECL sued Trade for breach of contract, alleging that Trade defaulted on the promissory note. Trade moved to compel arbitration, and the two soon stipulated to arbitration.

ECL pursued its breach of contract claim against Trade in arbitration, but *Trade* also sought damages against *ECL* for breach of contract by violating the asset purchase agreement. The Bank did not participate in the arbitration.

The arbitrator found that ECL, Halcovich, and Wendy Hertz (ECL's chief financial officer and Halcovich's wife) "all engaged in numerous breaches" of the asset purchase agreement by concealing information from Trade during the sale. ECL thus owed Trade contract damages. (The arbitrator found in ECL's favor on a fraud claim based on the same allegations.) But the arbitrator also found that Trade owed ECL under the note, so Trade also owed ECL contract damages.

The two awards largely cancelled each other out. In its closing brief in arbitration, Trade argued that it had "an equitable right to set off" the two awards, citing California cases and distinguishing a case ECL cited for the proposition that an offset was not warranted. (Our record does not contain ECL's closing brief in arbitration.) After

3

finding that Trade owed ECL $2,756,635.66 and that ECL owed Trade $2,611,463.58, with each amount representing damages, interest, attorneys' fees, and costs, the arbitrator offset the awards against each other, issuing only a single final award of the difference, $145,172.08, to ECL. The arbitrator explained that there was "a dispute between the parties" as to whether the amounts can be offset and that "I find that an offset is allowable under California law."

Though it had sought the setoff in arbitration, Trade petitioned to correct the arbitration award to eliminate it. Trade's primary basis for eliminating the setoff was that the offset "negatively impacted the rights" of the Bank. The Bank intervened and joined that position. The Bank had no quarrel with the arbitrator's finding that ECL and Trade each was liable to the other, nor for the particular amounts. The Bank claimed, however, that the arbitrator erred by offsetting the awards against each other. The Bank contended that the offset effectively prioritized Trade's promissory note payments to ECL over Trade's loan obligations to the Bank, when the subordination agreement required the opposite. As the Bank pointed out, if the arbitrator had not offset the awards against each other, ECL would have paid Trade roughly $2.61 million, and Trade would have been obligated to use that money to pay off the Bank's senior debt. Instead, the offset resulted in Trade effectively paying that amount (and roughly $145,000 more) back to ECL.[2]

---

[2] The parties all appear to agree that Trade is insolvent, so Trade cannot pay the Bank using assets other than the contract damages that ECL owes Trade. Not only did ECL sue Trade for missed promissory note payments, the Bank has claimed that Trade has defaulted on both of *its* loans by missing payments.

4

Trade and the Bank also argued that the setoff was in error because the individuals were jointly liable to Trade but Trade was not liable to them.

Finding that the arbitrator's setoff "effectively allow[ed] ECL to circumvent the subordination agreement" and that "[t]he award can be easily corrected by simply eliminating the setoff," the trial court granted Trade's petition to correct the award and denied ECL's petition to confirm it. After the trial court entered judgment accordingly, ECL, Halcovich, and Hertz appealed. Only Trade was designated as a respondent in the notice of appeal, but we have since granted the Bank's motion to proceed as an intervenor and respondent in this appeal.[3]

## DISCUSSION

"The scope of judicial review of arbitration awards is extremely narrow." (*Department of Personnel Administration v. California Correctional Peace Officers Assn.* (2007) 152 Cal.App.4th 1193, 1200.) With very limited exceptions, "an award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in sections 1286.2 (to vacate) and 1286.6 (for correction)." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 33 (*Moncharsh*).) "[C]ourts will not review the arbitrator's reasoning or the sufficiency of the evidence supporting the award." (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230

---

[3] Trade filed the respondent's brief in this case, which the Bank joined in full. We refer to the arguments made in Trade's brief as the Bank's arguments. The Bank has stated that Trade had assigned it the right to collect and enforce the portion of trial court's judgment on the arbitration award to Trade.

5

Cal.App.4th 1, 12.) On a trial court's ruling on a petition to confirm, correct, or vacate an arbitration award, issues of statutory interpretation and application of that interpretation to a set of undisputed facts "are questions of law subject to independent review." (*Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1087.)

Section 1286.6 permits a trial court to correct an arbitration award in three circumstances: "(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

The trial court relied only on section 1286.6, subdivision (b), and the Bank does not claim that subdivisions (a) or (c) apply, so we focus on the only subdivision at issue. The question for us, then, is the scope of authority that section 1286.6, subdivision (b) allows trial courts in identifying circumstances where "[t]he arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted."

Our Supreme Court has stated that the term "merits," when used in this context, includes "all the contested issues of law and fact submitted to the arbitrator for decision." (*Moncharsh*, *supra*, 3 Cal.4th at p. 28.) Our Supreme Court has also made clear that those "'contested issues of law and fact submitted to the arbitrator for decision'" can include issues surrounding remedies, such as awards of attorneys' fees; in other words,

6

"'contested issues'" is not synonymous with "substantive issues." (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 776 (*Moshonov*) [noting that "[t]he recovery or nonrecovery of fees" was "one of the 'contested issues of law and fact submitted to the arbitrator for decision,'" citing *Moncharsh*]; *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 787 (*Moore*) [same].) Under *Moncharsh*, *Moshonov*, and *Moore*, when the parties have contested an issue in the arbitration, the arbitrator's resolution of that issue is a decision on the "merits."

Applying that authority here, we conclude that section 1286.6, subdivision (b) did not allow the trial court's action because its correction of the award (by reversing the arbitrator's decision to setoff one award against the other) undoubtedly "affect[ed] the merits of the decision upon the controversy submitted." Under the caselaw cited above, the "merits" of the arbitrator's decision did not involve merely whether ECL violated the asset purchase agreement and Trade the promissory note. Trade argued to the arbitrator that it had a right to a setoff under California law, such that the damages due to it from "[r]espondents' conduct"—namely, ECL, Halcovich, and Hertz's conduct—should excuse it from paying ECL what it owed on the note. ECL argued to the contrary, and the arbitrator decided to order a setoff. The propriety of a setoff was thus a "contested issue[] of law and fact submitted to the arbitrator for decision." (*Moncharsh*, *supra*, 3 Cal.4th at p. 28.) The arbitrator decided it as part of deciding the "merits" of the controversy. (See *Moshonov*, *supra*, 22 Cal.4th at p. 776 [ "'The meaning of the phrase ['merits of the decision'] must . . . be found in the terms of the submission.'"]; accord,

7

*NCR Corp. v. Sac-Co., Inc.* (6th Cir. 1995) 43 F.3d 1076, 1081 [construing analogous provisions under the Federal Arbitration Act, 9 U.S.C. § 11 et seq.]; *Frazier v. CitiFinancial Corp., LLC* (11th Cir. 2010) 604 F.3d 1313, 1322 [same].)

Three consequences or limitations of our holding bear emphasis. First, *Moncharsh* used language suggesting that the merits of the controversy might not include the arbitrator's "resolving issues the parties did not agree to arbitrate." (*Moncharsh*, *supra*, 3 Cal.4th at p. 28.) That language might exclude from the merits an issue that a party did not consent to arbitrate when it agreed to arbitration, perhaps even if the parties submitted on it. (See, e.g., *Thompson v. Jespersen* (1990) 222 Cal.App.3d 964, 968 [during arbitration, appellant submitted on issue of attorney's fees "as a protective measure" while "strenuously[] and consistently[] contend[ing] the arbitrators had no jurisdiction to make such an award"].) After the arbitration here, though, Trade—the party that requested the setoff—argued in trial court that the arbitrator exceeded its powers in awarding the setoff that it successfully obtained, due to the setoff's effect on the Bank and its inclusion of the individuals in the setoff. In this case, there never has been a claim that the parties' arbitration agreement excluded from the arbitrator's ambit the issue of whether there can be a setoff.

Second, we recognize that a handful of other Court of Appeal cases have construed the term "merits" in a narrower way. Before our Supreme Court decided *Moshonov* and *Moore* in 2000, some cases held that the "merits" do not include questions about the propriety of a remedy. (See *DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809,

8

1815 (*DiMarco*) [denial of attorneys' fees could be corrected without affecting merits]; *Bellflower Education Assn. v. Bellflower Unified School Dist.* (1991) 228 Cal.App.3d 805, 812-813 [where only the arbitrator's remedy was found to be beyond the scope of the arbitrator's powers, court held that the "award may be corrected without affecting the merits of the decision upon the controversy submitted"].)  But, as we have noted, our Supreme Court has rejected the notion that a decision's "merits" excludes determinations on remedies.  (See *Moshonov*, *supra*, 22 Cal.4th at p. 776 [the term "'merits of the decision'" does not incorporate "'a distinction between substantive issues and procedural remedies'"].)  A few Court of Appeal cases have continued to rely on these earlier cases despite the intervening Supreme Court authority.[4]  We therefore respectfully disagree with those cases that have construed the term "merits" this way.

---

[4]  See *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 412 ["A correction of the award's division of the arbitration fees and expenses will not affect the arbitrator's findings on the merits of the substantive issues," citing *DiMarco*]; *Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242, 1259 [finding correction proper because "[h]ere, as in *DiMarco*, the fee award did not affect the merits of the substantive dispute"], disapproved on another ground in *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 117; *Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 771 ["Where a part of an arbitration award cannot be confirmed due to the arbitrator's error of law, the award may be corrected by striking the erroneous part if doing so does not affect the merits of the part that remains," citing *Jones v. Humanscale Corp.* and *Ling v. P.F. Chang's China Bistro, Inc.*].

Both *Moshonov* and *Moore*, which were decided on the same day, stated that they were declining to disapprove *DiMarco* to refrain from addressing *DiMarco*'s holding that a refusal to award required attorneys' fees was in excess of arbitral powers.  (See *Moore*, *supra*, 22 Cal.4th at p. 788 ["Neither this case nor *Moshonov* . . . presents the question whether, when an arbitrator designates a prevailing party and the contract expressly calls for such a prevailing party to be awarded attorney fees, the arbitrator exceeds his or her powers . . . by refusing the party's request for an award of fees.  The *DiMarco* court answered affirmatively," but "both our cases are distinguishable from *DiMarco*."].)

9

Third, in this appeal we need *not* address whether the arbitrator exceeded his powers. Whether an arbitrator exceeds his or her powers is distinct from whether a correction can be made without affecting the merits of the arbitrator's decision. Both are required for section 1286.6, subdivision (b) to apply. If the arbitrator exceeded his powers due to the effect of the award on the Bank, and the award could not have been corrected without affecting the merits, then the Bank would have had meritorious grounds for vacating the award altogether. (See § 1286.2, subd. (a)(4).) But Trade's petition in the trial court sought to correct the award, not vacate it; for instance, Trade checked boxes on the approved form for the former but not the latter. Trade also opposed confirming the award on only the basis that it should be corrected, not that it should be vacated. Attempting to vacate the award would have been a very different litigative choice for Trade, as success would have meant losing its victory on its claims against ECL along with eliminating the offset. Likewise, Trade's appellate briefing defends the trial court's correction of the award but does not argue for vacating it; the Bank joined those arguments. Our holding today is confined to whether the trial court's correction affected the merits of the arbitrator's decision.[5]

Neither *Moshonov* nor *Moore* expressly disapproved *DiMarco*'s holding that such an excess of authority could be corrected "without affecting the merits of the decision" (§ 1286.6, subd. (b)). The analyses in those cases, however, rejected that result.

[5] In situations where an arbitration award might improperly affect a third party's property rights, the law protects those rights beyond allowing the trial court to correct or vacate the award. Those protections include dismissing a petition as to someone who was not a party to the arbitration and not bound by the arbitration award (§ 1287.2) and the third-party procedures in the Enforcement of Judgments Law (§ 680.010 et seq.; see

The Bank's arguments in favor of correcting the award are unavailing. A substantial portion of the Bank's arguments focus on whether the arbitrator exceeded his powers, which, as noted, we need not decide in light of the fact that section 1286.6, subdivision (b) *also* requires that the merits not be affected. Although the Bank focuses a portion of its argument on its contention that the award correction did not affect the merits of the arbitrator's decision, the Bank did not address why, despite *Moncharsh*, *Moshonov*, and *Moore*, the term "merits" does not include the arbitrator's conclusion as to the availability of a setoff, which resolved a disputed issue.

Our caselaw has recognized an exception to the rule that the three grounds provided in section 1286.6 are the exclusive means of correcting an award: that exception applies "when unwaivable statutory rights are at stake." (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1353, fn. 14; see also *Moncharsh*, *supra*, 3 Cal.4th at p. 33.) The exception is grounded in the principle that "'[a]greements whose object, directly or indirectly, is to exempt [their] parties from violation of the law are against public policy and may not be enforced'" as well as the notion that "'[a]nyone may waive the advantage of a law intended solely for his benefit[, b]ut a law established for a public reason cannot be contravened by a private agreement.'" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100; see also cf. *Shearson/American Exp., Inc. v. McMahon* (1987) 482 U.S. 220, 226 ["Like any statutory directive, the [Federal] Arbitration Act's mandate may be overridden by a

*Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323, 1329-1330).

11

contrary congressional command"].) The Bank contends that its rights as a secured creditor (stemming from a security interest in Trade's assets) mean that this exception applies.

The Bank contends that its security interest in Trade's assets includes the arbitrator's approximately $2.61 million award to Trade (that is, what was awarded to Trade prior to setoff). But even if we were to assume for the sake of argument that this is correct—a premise that Trade disputes—the Bank's argument here fails for the simple reason that its rights as a secured creditor are waivable. (E.g. *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 1001 [describing one way a secured creditor could waive its rights].)

In sum, no valid ground exists for correcting the arbitration award under section 1286.6, subdivision (b), and the trial court erred in concluding otherwise.[6]

---

[6] While the trial court's options are limited when it adjudicates a petition to confirm an award such as the one here (see *EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058, 1063), a court may be able to craft a remedy in an independent lawsuit, which we are aware that the Bank has filed against the parties to this litigation, though we express no view on what the outcome of that lawsuit should be.

DISPOSITION

The judgment is reversed.  The matter is remanded with directions to the trial court to vacate the judgment confirming the arbitrator's award as corrected and to enter a new judgment confirming the final award dated November 3, 2018.  Appellants are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION


RAPHAEL_____
                                                                                                              J.


I concur:

RAMIREZ_____
                        P. J.

MENETREZ, J., Dissenting.

The trial court agreed with respondents that the arbitrator exceeded his powers. The majority opinion does not reverse that ruling—the majority opinion expressly declines to decide whether the arbitrator exceeded his powers. (Maj. opn., *ante*, at p. 10.) But the majority opinion directs the trial court to confirm the arbitration award anyway.

The trial court cannot confirm an award when it has properly ruled that the award exceeds the arbitrator's powers. Once the court has made that determination, it must either correct the award or vacate it. (Code Civ. Proc., §§ 1286.2 subd. (a)(4), 1286.6, subd. (b); *Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11 (*Cooper*); *Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 845 ["On its face, [Code Civ. Proc., § 1286.2] leaves no room for discretion. If a statutory ground for vacating the award exists, the trial court must vacate the award"].) Moreover, it is irrelevant that no party requested that the award be vacated, because the court may vacate the award on its own motion (Code Civ. Proc., § 1286.4) and must do so if the award exceeded the arbitrator's powers and cannot be corrected without affecting the merits (*id.*, § 1286.2). Consequently, even if the majority opinion were sound in every other respect, its disposition would be indefensible.

Unfortunately, the majority opinion's analysis is unsound as well. The trial court concluded that when the arbitrator set off two final, partial awards against each other, the arbitrator exceeded his powers because the setoff violated the rights of a third party who was not involved in the arbitration. The trial court accordingly corrected the award by eliminating the setoff. But the majority opinion concludes that because the parties to the

1

arbitration submitted the setoff issue to the arbitrator, that issue was part of "the merits" and therefore could not be corrected by the trial court, *regardless of whether the setoff exceeded the arbitrator's powers*. (See Code Civ. Proc., § 1286.6, subd. (b) [an arbitration award may be corrected only if the correction does not affect "the merits of the decision upon the controversy submitted"].)

That conclusion is mistaken. A part of an arbitration award that exceeds the arbitrator's powers cannot itself be a part of "the merits" and hence uncorrectable. The majority opinion's entire approach—deciding what is included in "the merits" without deciding whether the arbitrator exceeded his powers—is therefore misbegotten.

The setoff did exceed the arbitrator's powers, and the trial court accordingly corrected the award without affecting the merits. The trial court thus got everything right, but the majority opinion undoes the trial court's good work and reinstates the arbitrator's unauthorized and unjust award. I therefore respectfully dissent.

1.    *Background*

Frank Halcovich and Wendy Hertz are the shareholders of E-Commerce Lighting, Inc. (ECL). In 2015, ECL sold its business to E-Commerce Trade LLC (Trade). The purchase agreement provided for dispute resolution by arbitration at Judicial Arbitration and Mediation Service (JAMS). Trade financed the purchase by borrowing $2.5 million from ECL and $6.2 million (consisting of a $5 million loan and a $1.249 million line of credit) from Banc of California, National Association (the Bank).

ECL's loan to Trade was memorialized by a promissory note (the ECL Note), which provided that the loan was subordinate to any debt owed by Trade to "any bank." ECL's loan was not secured.

The Bank secured its loans by entering into security agreements with Trade. The security agreements gave the Bank a security interest in all of Trade's assets, including general intangibles, payment intangibles, and all proceeds derived from those assets.

The Bank also protected its right to repayment by entering into a subordination agreement with ECL and Trade, pursuant to which all debts owed by Trade to ECL were "subordinated in all respects" to all debts owed by Trade to the Bank. The subordination agreement also provides that any security interest that ECL might hold or acquire in any asset of Trade's is subordinated to all of the Bank's security interests in Trade's assets.

The subordination agreement allowed Trade to make certain payments on its debt to ECL as long as Trade was not in default on its debt to the Bank. But apart from those "Permitted Payments," ECL assigned to the Bank "all [ECL's] right, title, and interest" in any claims on any debts Trade owed to ECL.

In 2017, Trade defaulted on its loans from the Bank.

In February 2017, ECL sued Trade for breach of the ECL note, alleging that Trade was in default on its debt to ECL. In March 2017, Trade filed a demand for arbitration against ECL, Halcovich, and Hertz for fraud, breach of contract, and breach of the covenant of good faith and fair dealing. Trade alleged that ECL, Halcovich, and Hertz had fraudulently failed to disclose known, material information concerning the sale of

3

ECL's business to Trade, in violation of various disclosure provisions of the purchase agreement.

Pursuant to a stipulation by ECL and Trade, the superior court ordered ECL's claim against Trade to be decided by binding arbitration. The parties thus proceeded to arbitration on both claims: ECL's claim against Trade on the ECL note, and Trade's claim against ECL, Halcovich, and Hertz for fraud and breach of contract.

On July 23, 2018, the arbitrator served a final, partial award. It rejected Trade's fraud claim but found in favor of Trade on its breach of contract claim, awarding Trade $2 million against ECL, Halcovich, and Hertz. The award also found in favor of ECL on its claim on the ECL note but did not specify the amount of damages, because there was a potential dispute about the amount of unpaid interest.

Under JAMS arbitration rules, the parties may request correction of an award within seven days of service, and the award becomes final and confirmable by a court 14 days after service if no request for correction is made. (JAMS Rule No. 24(j)-(k).) No party requested correction, so the partial award became final, and the arbitrator lost the power to modify it, no later than August 7, 2018.

On October 5, 2018, the arbitrator served a final, partial award concerning attorney fees and costs. The only unresolved issue was the computation of interest, and the award gave each side 10 days to submit proposed final awards including damages, attorney fees and costs, and interest. Again, no party requested correction of the award, so it became final no later than October 20, 2018.

4

On November 5, 2018, the arbitrator served a final award that combined the results of the two final, partial awards, added interest to them, and then set off those amounts against each other. The award concluded that the "total award in favor of ECL," including attorney fees, costs, and interest, was $2,756,635.66. The "total award in favor of [Trade]," including attorney fees, costs, and interest, was $2,611,463.58. Setting off those amounts against each other, the award provided for a "net judgment in favor of [ECL], Frank Halcovich and Wendy Hertz" against Trade in the amount of $145,172.08. That is, the final award gave Halcovich and Hertz $145,172.08 in damages on the ECL note even though (1) Halcovich and Hertz were not parties to the ECL note, (2) Halcovich and Hertz therefore were not parties to ECL's claim on the ECL note, (3) Halcovich and Hertz never made any claims for any form of relief, and (4) neither of the final, partial awards gave anything to Halcovich and Hertz.

ECL, Halcovich, and Hertz petitioned the superior court to confirm the final award. Trade opposed that petition and filed its own petition to correct the award by eliminating the setoff. Trade argued that the setoff exceeded the arbitrator's powers because (1) it violated the rights of the Bank (and other creditors) who had never agreed to arbitrate, and (2) it set off the award in favor of ECL against the award against Halcovich and Hertz. The Bank moved to intervene in order to protect its rights as a secured creditor.

The court granted the Bank's motion to intervene, agreed that the setoff exceeded the arbitrator's powers, corrected the award by eliminating the setoff, and confirmed the award as corrected. The court concluded that "[t]he Bank's direct interest in this matter

5

shows that the setoff here does far more than simply eliminate a superfluous exchange of money between the parties."

2. *Analysis*

The setoff exceeded the arbitrator's powers, so the trial court properly corrected the award by eliminating the setoff while leaving every other aspect of the award intact. The majority opinion contains no argument for a contrary conclusion on either point.

There are several reasons why the award exceeded the arbitrator's powers. First, the Bank holds a security interest in all of Trade's assets, including intangibles. The Bank therefore holds a security interest in both of the final, partial awards to Trade, totaling over $2 million. By setting off the awards to Trade against the awards to ECL, the arbitrator destroyed the Bank's security interest in the awards to Trade. The arbitrator did not have the power to do that. The arbitration agreement limits and circumscribes the powers of the arbitrator. (*Vandenburg v. Superior Court* (1999) 21 Cal.4th 815, 830.) And although arbitration "is a favored method of resolving disputes, . . . the policy favoring arbitration does not eliminate the need for an agreement to arbitrate and does not extend to persons who are not parties to an agreement to arbitrate." (*Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 598.) Thus, it does not matter whether Trade and ECL asked the arbitrator to decide the setoff issue. (See *Kurtin v. Elieff* (2013) 215 Cal.App.4th 455, 467 [rejecting an argument because it confused what the claimant "*asked for* in the arbitration with the arbitrator's power to *give it* in light of the scope of the arbitrator's powers"].) The Bank did not agree to arbitrate anything with anyone, so the arbitrator had no power to adjudicate the Bank's rights.

6

If Trade owned a warehouse and the arbitrator gave it to ECL free and clear, in satisfaction of Trade's debt on the ECL note, the result would be the same. The Bank holds a security interest in all of Trade's assets, so the Bank would hold a security interest in the warehouse. The arbitrator would have no power to eliminate the Bank's security interest in the warehouse, because the Bank never agreed to arbitrate anything with anyone.

An arbitrator has the power to decide issues only "'so long as they are a part of the "controversy" which is subject to arbitration.'" (*National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1724.) For purposes of this case, the term "'[c]ontroversy' means any question arising between parties to an agreement" (Code Civ. Proc., § 1280, subd. (d)), specifically the arbitration agreement. (*Leenay v. Superior Court* (2022) 81 Cal.App.5th 553, 563-564.) The Bank's security interest in the awards to Trade necessarily involved the Bank, a nonparty to the arbitration agreement here. Adjudication of the Bank's security interest therefore was not subject to arbitration.

The majority opinion briefly mentions the Bank's security interest in Trade's assets but disposes of the issue with the observation that the Bank's "rights as a secured creditor are waivable." (Maj. opn., *ante*, at p. 12.) The majority opinion does not explain why that matters, given that the Bank never did anything that might constitute a waiver of its rights. On the contrary, the record reflects that the Bank has promptly, diligently, and consistently taken appropriate steps to preserve its rights as a secured creditor of Trade.

Second, the final, partial awards did not award any affirmative relief to either Halcovich or Hertz. But the final award, which purports to do nothing more than add

7

interest to the prior awards and then set them off against each other, awards $145,172.08 to Halcovich and Hertz.  Thus, in effect the final award modified the prior awards to ECL by transforming them into awards to ECL, Halcovich, and Hertz.  But the arbitrator did not have the power to do that.  Under JAMS rules, the arbitrator lost the power to modify the prior awards 14 days after they were served.  (*Cooper*, *supra*, 230 Cal.App.4th at p. 5 [arbitrator exceeded his powers by modifying the final award to award attorney fees, so the court corrected the modified award by striking the revisions].)

Third, the arbitrator had no power to award any relief to Halcovich and Hertz against Trade, because no one ever agreed to submit to the arbitrator any claims for relief by Halcovich and Hertz against Trade, because Halcovich and Hertz have never asserted any such claims.  (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 ["An arbitrator exceeds his powers when he . . . [citation] decides an issue that was not submitted to arbitration"].)  The only claim against Trade was ECL's claim on the ECL note.  Halcovich and Hertz are not parties to that claim, because they are not parties to the ECL note.  The arbitrator has no power to make an award on a claim in favor of individuals who are not parties to that claim, and who are not even parties to the business transaction (ECL's loan to Trade) on which the claim is based.[7]

---

[7]     I note that ECL had no right to sue on the ECL note in the first place, because ECL had assigned all its claims on the ECL note to the Bank.  (*Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096 ["Once a claim has been assigned, the assignee is the owner and has the right to sue on it.  [Citations.]  In fact, once the transfer has been made, the assignor lacks standing to sue on the claim"].)  As a result, the final, partial awards against Trade on the ECL note actually belong to the Bank—ECL obtained those awards by suing on claims that ECL had already assigned to the Bank.  In my view,

8

For all of these reasons, the award exceeded the arbitrator's powers. The majority opinion contains no analysis to the contrary—it expressly declines to decide whether the award exceeded the arbitrator's powers. (Maj. opn, *ante*, at p. 10.)

The award can easily be corrected without affecting the merits by eliminating the setoff, as the trial court did. That correction leaves literally every other part of the award, every other aspect of the arbitrator's decision, intact. Every liability finding, every calculation of damages, every determination of attorney fees and costs, every computation of interest, and the summing up of those amounts all remain. All that is removed is the final step, in which the arbitrator subtracted the award to Trade from the award to ECL and gave the difference to ECL, Halcovich, and Hertz. The correction has no effect on "the merits of the decision upon the controversy submitted" within the meaning of Code of Civil Procedure section 1286.6, subdivision (b), because (1) the correction does nothing but eliminate the setoff, (2) the setoff was beyond the arbitrator's powers and hence cannot be part of the merits, and (3) the correction does not affect any other aspect of the award.

The majority opinion holds that because the parties to the arbitration submitted the issue of setoff to the arbitrator, the issue of setoff is part of the merits *regardless of whether the setoff exceeded the arbitrator's powers*. (Maj. opn., *ante*, at pp. 6-7.) That holding is erroneous. If the parties lack the power to authorize the arbitrator to decide an

---

that is another way in which the arbitrator gave away the Bank's property and hence exceeded his powers. The setoff gave ECL (and Halcovich and Hertz) the value of the awards on the ECL note, but those awards belong to the Bank.

issue, but the parties submit the issue to the arbitrator anyway, then the arbitrator's decision on that issue is beyond the arbitrator's powers and hence cannot be part of the merits.

For example, if ECL and Trade submitted to the arbitrator a dispute over which of them owns the building located at 3389 Twelfth Street in Riverside, California, and the arbitrator awarded the building to ECL, then that decision would exceed the arbitrator's powers, because that building is our courthouse. ECL and Trade have no power to authorize anyone to award ownership of our courthouse. The arbitrator hence has no power to give our courthouse to ECL or Trade, even if the parties ask the arbitrator to do just that. Consequently, any decision by the arbitrator to award our courthouse to ECL would not be part of the merits of the arbitrator's award.

Neither the majority opinion nor *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 contains any contrary analysis. The majority opinion never explains how a part of the award that exceeds the arbitrator's powers could nonetheless be part of the merits and hence uncorrectable.

Instead, the majority opinion reasons that because the setoff issue was submitted to the arbitrator and hence was part of the merits, correcting the award by eliminating the setoff was impermissible, so we need not decide whether the arbitrator exceeded his powers. (Maj. opn., *ante*, at pp. 10-11.) That reasoning is unsound, as already explained. We cannot determine whether the setoff was part of the merits without first determining whether the setoff exceeded the arbitrator's powers. But that is precisely what the majority opinion purports to do.

10

Finally, I note that the majority opinion does not attempt to explain how any putative error by the trial court was prejudicial. Appellants' briefs likewise never address the issue of prejudice. It is appellants' burden to demonstrate both error and prejudice (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069), so appellants' forfeiture of the issue is sufficient on its own to warrant affirmance. And independently of appellants' failure to argue the point, we cannot reverse unless we find prejudice. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

For all of the foregoing reasons, I respectfully dissent. The setoff exceeded the arbitrator's powers. The trial court's correction of the award by eliminating the setoff did not affect the merits. The trial court's judgment should therefore be affirmed in its entirety.

MENETREZ _____

J.

11