Filed 10/31/24; Certified for Publication 11/7/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ERICKA ORTIZ, as Personal Representative and Administrator, etc.,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>ELMCREST CARE CENTER, LLC, et al.,<br><br>      Defendants and Respondents. | B330337<br><br>Los Angeles County<br>Super. Ct. No. BC702695 |

        APPEAL from an order of the Superior Court of Los Angeles County, Peter A. Hernandez, Judge.  Reversed with directions.

        Law Office of Joseph M. Kar and Joseph M. Kar for Plaintiffs and Appellants.

        Fraser Watson & Croutch, Todd E. Croutch and Megan P. Best for Defendants and Respondents.

———————————

Plaintiff Ericka Ortiz, as personal representative and administrator of the Estate of Jose de Jesus Ortiz (the Estate), appeals an order (1) confirming an interim arbitration award in favor of defendants Elmcrest Care Center, LLC (Elmcrest) and four of the facility's staff members (collectively, Respondents); and (2) vacating a subsequent final award in favor of the Estate.[1] The Estate contends governing law authorized the arbitrator to decide whether its interim award resolved all issues necessary to an ultimate determination of the controversy, and the arbitrator expressly reserved a final determination of that issue for further briefing when she entered the interim award. Because the interim award was not a final award, the Estate argues the trial court had no jurisdiction to confirm it or to use it as a basis for vacating the subsequent final award. We agree with the Estate. We therefore reverse and vacate the order with directions to enter a new order confirming the final arbitration award served on September 30, 2022.

## BACKGROUND

1. ***Factual Background***

In February 2013, the decedent was admitted to Elmcrest— a skilled nursing facility. He suffered from Parkinson's disease,

---

[1] The four staff members are Elmcrest's supervisor Sandra Alviso, registered nurse (RN) Sharon Balane-de Ocera, licensed vocational nurse (LVN) Diana Rivas, and certified nursing assistant (CNA) Juanita Cristalez.

The decedent's heirs (including Ericka Ortiz in her individual capacity) also sued Respondents; however, only the Estate's claims were ordered to arbitration and only the Estate is an appellant here. The heirs' claims were stayed (and remain stayed) in the trial court pending completion of the arbitration.

dysphagia, and dementia; he had a history of falling; and he was on an advanced dysphagia diet.

On August 4, 2017, staff at Elmcrest found the decedent on the floor and nonresponsive. They administered CPR and called 911. Paramedics later transported the decedent to a hospital, where he passed away four days later. He was 63 years old.

## 2.    *The Civil Action*

The Estate filed a civil action against Elmcrest and the individual staff members, asserting causes of action for elder abuse and neglect; negligence/willful misconduct; and fraud. The operative pleading alleged that, as result of Respondents' failure to provide basic and necessary care to the decedent, he suffered a fall from his bed that led to suffocation, deprivation of oxygen to his brain, and respiratory arrest. The trial court granted Respondents' motion to compel the Estate to arbitrate its claims based on an agreement the decedent executed upon his admission to Elmcrest.

## 3.    *The First Interim Award*

The parties selected ADR Services, Inc. to conduct the arbitration, and the Hon. Michelle R. Rosenblatt (Ret.) was selected as the arbitrator for the matter. The parties agreed the provider's arbitration rules (ADR Rules) would govern the arbitration.

On March 30, 2022, after a 15-day arbitration hearing, the arbitrator served the parties with a 90-page document entitled "Interim Award" (the First Interim Award). The First Interim Award set forth the arbitrator's evaluation of the evidence and resolution of disputed issues, including factual findings regarding

3

the Estate's elder abuse cause of action.[2]  Specifically, as relevant here, the arbitrator found (1) although Elmcrest, including LVN Rivas and RN Balane-de Ocera, did not sufficiently monitor decedent's fluid intake for dehydration, the Estate "did not establish a causal link between the harm [decedent] experienced and the failure to provide care"; (2) although Elmcrest, including RN Balane-de Ocera, had been "reckless" in failing to supervise staff, the Estate did not establish a "causal connection between any failure of supervision [or] oversight and the harm" decedent experienced; (3) although Elmcrest, including LVN Rivas and RN Balane-de Ocera, failed to abide by decedent's do-not-resuscitate (DNR) order, the Estate "did not prove each of the elements of the Elder Abuse Act"; (4) although CNA Cristalez "was reckless" in leaving decedent unattended on the date of his fall, the Estate "did not establish a causal connection between this inattention and the harm" to decedent; and (5) although RN Balane-de Ocera "acted below the standard of care in failing to assess, treat and care" for decedent, the Estate "did not prove a causal connection between [her] failure to assess [decedent] and the harm to [decedent] and/or his subsequent death."

---

[2]     Although styled as an "elder abuse" claim, the arbitrator found the 63-year-old decedent was a "dependent adult" under the Elder Abuse and Dependent Adult Civil Protection Act.  (See Welf. & Inst. Code, § 15610.23, subd. (a) [" 'Dependent adult' means a person, regardless of whether the person lives independently, between the ages of 18 and 64 years who resides in this state and who has physical or mental limitations that restrict his or her ability to carry out normal activities or to protect his or her rights . . . ."].)  Because the arbitrator and parties referred to this as the "elder abuse" claim, we use the same terminology.

4

The First Interim Award concluded with the arbitrator's liability determinations on all causes of action and set forth conditions for further proceedings before the award would become final:

> "The Arbitrator finds that the Claimant, ERICKA ORTIZ, as personal representative of and administrator for the ESTATE OF JOSE DE JESUS ORTIZ did not sustain her burden of proof as to the first cause of action for Elder Abuse and Neglect, the third cause of action for Negligence/Willful Misconduct[,] and the sixth cause of action for Fraud.
>
> "This Award is intended to address all issues in dispute even if not expressly discussed herein.
>
> "This Interim Award will become final twenty days after service unless either side (a) points out in writing an omission to decide a submitted issue or (b) moves for further relief authorized by the law and the parties' Arbitration Agreement. The opportunity to point out an omission to decide a submitted issue is not intended as an invitation for further argument on the merits of matters that have been decided in this Interim Award.
>
> "A motion for further relief, if applicable, must be filed within 15 days of the service of this Interim Award. A Response may be filed and served within 10 days after the Motion is served and a Reply may be filed and served

5

within 5 days thereafter.  The motion will be determined on the papers without hearing."

**4.      *The Estate's Request to Amend the First Interim Award to Determine Omitted Issues***

On April 5, 2022, the Estate filed a request to amend the First Interim Award.[3]  Among other things, the Estate argued the arbitrator had found Elmcrest and certain individual staff members "acted recklessly and caused [decedent] to suffer indignity prior to and at death, including a total disregard and disrespect of his end of life decision[s]," yet "no award of damages was made for that injury to dignity."  Based on this purportedly omitted issue, the Estate asserted the First Interim Award "must be corrected to decide the issue of amount for those damages."

Consistent with the provision for briefing set forth in the First Interim Award, Respondents filed an opposition to the request and the Estate filed a reply.

**5.      *The Second Interim Award***

On May 26, 2022, the arbitrator served the parties with "Interim Award No. 2" (the Second Interim Award).  The Second Interim Award reaffirmed that the Estate "did not sustain its burden of proof as to the third cause of action for Negligence/ Willful Misconduct" and "did not sustain its burden of proof as to the sixth cause of action for Fraud."  However, as to the "first cause of action for Elder Abuse/Neglect," the Second Interim Award found the Estate had "sustained its burden

---

[3]      The Estate also filed a motion for further relief, which does not appear to have been included in the record.  Judging from the arbitrator's discussion of the motion in her subsequent award, the motion appears to have concerned a request for terminating sanctions that is not at issue in this appeal.

6

of proof by clear and convincing evidence," but "failed to prove malice, oppression or fraud." The arbitrator explained that, "in review of the findings" in the First Interim Award, she had "found that there was reckless neglect causing pre-death pain and suffering as to the Elder Abuse/Dependent Adult cause of action," but she had failed to consider this injury in issuing the First Interim Award. Based on the findings of recklessness, the arbitrator awarded $100,000 in damages against Elmcrest and the individual staff members for "pre-death pain and suffering" and invited the Estate to file a motion for attorney fees and costs within 15 days.[4]

**6.**     ***Respondents' Motion to Vacate the Second Interim Award***

On June 6, 2022, Respondents filed a motion with the arbitrator to vacate the Second Interim Award. They argued the First Interim Award was a final " 'award' " under governing law, and the arbitrator's power to correct or amend the award did not allow her "to reconsider the merits of the original award." (Boldface type omitted.) Because the First Interim Award had "found that none of the respondents were liable under any theory" (boldface type omitted), Respondents argued the arbitrator had necessarily "reversed [her] findings on a number of [the Estate's] theories of liability." Thus, Respondents argued the arbitrator was required to vacate the Second Interim Award, as it constituted "an improper reweighing and reconsideration

---

[4]     The arbitrator awarded $30,000 against Elmcrest, $20,000 against CNA Cristalez, $30,000 against RN Balane-de Ocera, and $20,000 against LVN Rivas.

7

of the merits" that had been conclusively determined in the First Interim Award.

The arbitrator set Respondents' motion for hearing on July 14, 2022. The scheduling order stated issuance of a final award including attorney fees would be deferred until the motion to vacate "is resolved."

### 7. *The Estate's Petition to Vacate the March Award*

On July 6, 2022, the Estate petitioned the trial court to vacate the First Interim Award.[5] Among other things, the Estate argued the First Interim Award was not final and had been superseded by the Second Interim Award.

### 8. *The Arbitrator's Ruling on Respondents' Motion to Vacate the Second Interim Award*

On July 29, 2022, the arbitrator issued her ruling denying Respondents' motion to vacate the Second Interim Award. The arbitrator emphasized that, when she issued the First Interim Award, she expressly "titled [it] an Interim Award" and "invit[ed] the parties to advise . . . of any omitted issues and corrections." Consistent with that provision and the Estate's request to amend, the arbitrator determined she had "inadvertently omitt[ed] the issue of indignity in pre-death pain and suffering" when issuing the First Interim Award. Because she had "made certain

---

[5] Because a petition to vacate an arbitration award must be filed and served "not later than 100 days after" the arbitrator serves "a signed copy of the award" (Code Civ. Proc., § 1288), the Estate clarified it had filed the petition to preserve its rights "in the event [the First Interim Award] might be found to be an 'award' " under the governing statutes.

Subsequent statutory references are to the Code of Civil Procedure.

8

findings of neglect and recklessness" in the First Interim Award, the arbitrator rejected Respondents' contention that the Second Interim Award constituted an impermissible reconsideration of the merits. Rather, the arbitrator reasoned those findings supported the Estate's claim for "loss of dignity as part of pre-death pain and suffering," which she had inadvertently failed to consider when she issued the First Interim Award. This omitted issue, the arbitrator concluded, warranted "an award against certain Respondents" as set forth in the Second Interim Award.

## 9. *The Final Award*

On September 7, 2022, the Arbitrator issued a "Final Award," awarding the Estate $100,000 in damages on the elder abuse claim, $208,035 in attorney fees, and $92,921.77 in costs. Unlike the First Interim Award, this award placed no conditions on finality. It stated: "This Award is binding and is intended to address all issues in dispute even if not expressly discussed herein. The Arbitrator is not empowered to redetermine the merits of any claim already decided. [¶] This Award may be presented to the Court pursuant to CCP §1285 et seq."

On September 30, 2022, the Arbitrator issued a "Final Award (Corrected)," again awarding $100,000 in damages and $92,921.77 in costs (the Final Award). The Final Award corrected a miscalculation related to the lodestar and multiplier to award the Estate $207,000 in attorney fees.

## 10. *Respondents' Motion to Confirm the First Interim Award*

On October 12, 2022, Respondents filed a petition in the trial court to confirm the First Interim Award. They asserted the First Interim Award "addressed all issues necessary to

9

the resolution of the controversy subject to arbitration" and constituted "an 'award' for purposes of confirming, vacating, or correcting an arbitration award" under the governing statutes. Because all other prerequisites for confirmation of the First Interim Award were met, Respondents argued confirmation was statutorily mandated.

11. ***The Order Denying the Estate's Petition to Vacate the First Interim Award***

On November 7, 2022, the trial court entered an order denying the Estate's petition to vacate the First Interim Award. The court reasoned the First Interim Award was not a final arbitration award because it was "expressly noted to be 'interim,'" and it authorized "'either side'" to file a motion with the arbitrator "'point[ing] out in writing an omission to decide a submitted issue.'" Because the arbitrator had found the First Interim Award "did not determine all issues," the court concluded it lacked jurisdiction to vacate the First Interim Award.

12. ***The Order Confirming the First Interim Award and Vacating the Final Award***

On December 14, 2022, Respondents filed a petition to vacate the Final Award. The same day, the Estate filed a petition to confirm the Final Award.

In advance of the scheduled hearing, the trial court issued a tentative decision on the parties' dueling petitions. The court explained it "believe[d] that it incorrectly concluded that the [First Interim Award] did not determine all issues necessary to the resolution of the controversy" when it ruled on the Estate's earlier petition to vacate the First Interim Award. However, given that ruling, the court requested supplemental briefing

10

to address "whether [the court] can *sua sponte* amend its ruling" to find the First Interim Award constituted a final arbitration award subject to the court's jurisdiction.

After receiving the parties' supplemental briefs, the trial court entered an order (1) denying the Estate's petition to confirm the Final Award and (2) granting Respondents' petitions to vacate the Final Award and to confirm the First Interim Award. With respect to its earlier ruling, the court explained it had "focused on the terminology used in characterizing the Arbitration Award instead of reviewing the substantive findings made by the Arbitrator." In "hindsight" and in "substantively reviewing" the First Interim Award and the Final Award, the court found the First Interim Award "did indeed address the necessary issues to determine the controversy, such that it should be confirmed." The court disagreed with the arbitrator's determination that the First Interim Award had omitted consideration of decedent's alleged "pre-death pain and suffering," and found the arbitrator "appear[ed]" to have used that issue "as a justification to reconsider her legal and factual findings related to elder abuse liability."

On May 2, 2023, the court entered its order vacating the Final Award and confirming the First Interim Award. The Estate filed a timely appeal. (See § 1294, subd. (c).)

## DISCUSSION

The Estate contends the trial court erred when it overruled the arbitrator by vacating the Final Award. Under governing law, the Estate argues it was for the arbitrator to decide what issues were necessary to an ultimate determination of the controversy and the arbitrator expressly reserved a final decision on this matter for further briefing when she issued the First

Interim Award.  Because the First Interim Award, by its express terms, was not final, the Estate argues the trial court had no jurisdiction to confirm the First Interim Award, nor authority to invoke the interim ruling as a basis for vacating the Final Award. We agree the trial court exceeded its jurisdiction by vacating the Final Award.

1. ***Governing Law and Standard of Review***

The California Arbitration Act (§§ 1280–1294.4; the Arbitration Act) "represents a comprehensive statutory scheme regulating private arbitration in this state."  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).)  "The statutes set forth procedures for the enforcement of agreements to arbitrate (. . . §[§] 1281.2–1281.95), establish rules for the conduct of arbitration proceedings except as the parties otherwise agree (. . . §[§] 1282–1284.2), describe the circumstances in which arbitrators' awards may be judicially vacated, corrected, confirmed, and enforced (. . . §[§] 1285–1288.8), and specify where, when, and how court proceedings relating to arbitration matters shall occur (. . . §[§] 1290–1294.2)."  (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830 (*Vandenberg*).)

Section 1283.4 specifies the requisite "form and contents" of an arbitration award.  (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1137 (*Kaiser*).) The statute provides the "award shall be in writing," "signed by the arbitrators concurring therein," and it "shall include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy."  (§ 1283.4.)  "The issuance of an 'award' " meeting the requirements of section 1283.4 "is what passes the torch of jurisdiction from the arbitrator to the trial court."  (*Lonky v. Patel*

12

(2020) 51 Cal.App.5th 831, 843–844 (*Lonky*), see, e.g., § 1285 ["Any party to an arbitration in which an *award* has been made may petition the court to confirm, correct or vacate the *award*." (italics added)].) Thus, it is "incumbent on the trial court, before confirming or vacating what has been deemed an award, 'to ensure that the . . . "award" is an "award" within the meaning of [section 1283.4].' " (*Kaiser*, at p. 1142, quoting *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 767.) If an arbitration " 'award' does not qualify as an award under section 1283.4, then the [trial] court is deprived of jurisdiction to confirm or vacate it." (*Kaiser,* at p. 1143.)

In construing the requirements for an award under section 1283.4, our Supreme Court has held it "is for *the arbitrators* to determine which issues were actually 'necessary' to the ultimate decision." (*Morris v. Zuckerman* (1968) 69 Cal.2d 686, 690, italics added (*Morris*); accord *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 372 (*AMD*).) In light of this authority, our high court has recognized that "when a putatively final arbitration award omits resolution of an issue necessary to decide the parties' controversy, the arbitrator retains power to amend the award to address the undecided issue." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 363 (*Heimlich*).) "This retention of authority stems from the statutory obligation to decide all issues within the scope of the arbitrator's assignment. It flows as well from the policy underlying that duty: '[T]he fundamental purpose of contractual arbitration is to finally resolve *all* of the issues submitted by the parties as expeditiously as possible [citation], without the time and expense burdens associated with formal judicial litigation.' " (*Id.* at p. 364, quoting *Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86

13

Cal.App.4th 865, 882.) "By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain." (*Moncharsh, supra,* 3 Cal.4th at p. 10.)

"Ensuring arbitral finality . . . requires that judicial intervention in the arbitration process be minimized." (*Moncharsh, supra,* 3 Cal.4th at p. 10.) This principle of limited judicial review "is a well-understood feature of private arbitration, inherent in the nature of the arbitral forum as an informal, expeditious, and efficient alternative means of dispute resolution." (*Vandenberg, supra,* 21 Cal.4th at p. 831.) Our Supreme Court has long emphasized "private arbitration is a process in which parties voluntarily trade the safeguards and formalities of court litigation for an expeditious, sometimes roughshod means of resolving their dispute." (*Ibid.*) "The traditional rule is that ' "[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim *that a party might successfully have asserted in a judicial action.*" . . . "The arbitrators are not bound to award on principles of dry law, but may decide on principles of equity and good conscience, and make their award *ex aequo et bono* [according to what is just and good]." [Citation.] "As a consequence, . . . '[p]arties who stipulate in an agreement that controversies . . . shall be settled by arbitration, may expect not only to reap the advantages that flow from the use of that nontechnical, summary procedure, but also to find themselves bound by an award reached by paths neither marked nor traceable and not subject to judicial review.' " ' " (*Id.* at pp. 831–832; *Moncharsh,* at pp. 10–11.)

"[A]n appropriately deferential review starts not from the beginning, but from *the arbitrator's own rational assessment of his or her contractual powers* and is dependent on (that is, rests on acceptance of) this and any other factual or legal determination made by the arbitrator." (*AMD, supra,* 9 Cal.4th at p. 376, italics added.) Thus, "[a]lthough section 1286.2 permits the court to vacate an award that exceeds the arbitrator's powers, the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers." (*Id.* at p. 372, citing *Morris, supra,* 69 Cal.2d at p. 691.) "It is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' " (*Moncharsh, supra,* 3 Cal.4th at p. 28, quoting *O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 111.)

We review de novo the trial court's decision to confirm or vacate an award. (*AMD, supra,* 9 Cal.4th at p. 376, fn. 9; *Lonky, supra,* 51 Cal.App.5th at pp. 841–842.) In conducting this independent review, we are necessarily mindful of the limits of judicial review that applied to the trial court's assessment of the arbitrator's decision. "The principle of arbitral finality, the practical demands of deciding on an appropriate remedy . . . , and the prior holdings of [our Supreme Court] all dictate that arbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies, and that judicial review of their awards must be correspondingly narrow and deferential." (*AMD,* at p. 376.)

15

## 2. *The Final Award Was the "Award" Under the Arbitration Act*

"[A] ruling that is *not* an 'award' " under section 1283.4 "is neither subject to . . . limits on an arbitrator's power to modify that ruling nor subject to confirmation, correction or vacation by a trial court." (*Lonky, supra,* 51 Cal.App.5th at p. 844.) Resolution of this appeal therefore turns on whether the First Interim Award or the Final Award constituted the statutorily defined "award" under the Arbitration Act. As the Estate contends, if the First Interim Award was not an "award," then the trial court had neither jurisdiction to confirm it, nor grounds to vacate the Final Award as an impermissible modification by the arbitrator. Two points of law are critical to our resolution of this dispositive issue: (1) a ruling is an "award" under the Arbitration Act only if it determines all questions submitted to the arbitrator that are "necessary in order to determine the controversy" (§ 1283.4; see *Lonky,* at p. 845); and (2) it "is for *the arbitrators* to determine which issues were actually 'necessary' to the ultimate decision" in deciding whether a ruling constitutes an award under the statute (*Morris, supra,* 69 Cal.2d at p. 690, italics added; accord *AMD, supra,* 9 Cal.4th at p. 372).

By its terms, the First Interim Award was not a final "award" as defined in section 1283.4 because, in issuing the ruling, the arbitrator expressly reserved for further proceedings her ultimate decision on whether all questions necessary to a determination of the controversy had been resolved and whether either party was entitled to further relief. The crucial provision states, "This Interim Award will *become final* twenty days after service *unless* either side (a) points out in writing an omission to decide a submitted issue or (b) moves for further relief

16

authorized by the law and the parties' Arbitration Agreement." (Italics added.) Because the provision contemplated additional proceedings and a future decision in the event that either party made an authorized written submission, the First Interim Award simply could not be construed to have determined "all the questions submitted to the arbitrator[ ]" at the time it issued. (§ 1283.4; see *Lonky, supra,* 51 Cal.App.5th at p. 846.)

*Lonky* is instructive. The plaintiffs in that case sued their business partner for embezzlement and breach of contract, alleging the partner stole money from their medical practice. After a five-day hearing, the arbitrator served the parties with a "33-page written award entitled 'Interim Award' (First Interim Ruling)," sustaining all the plaintiffs' claims. (*Lonky, supra,* 51 Cal.App.5th at pp. 836–837.) The First Interim Ruling specified "the amounts awarded for compensatory damages" and found the plaintiffs were " 'the prevailing party in this Arbitration,' but left blank the amount of attorney fees and costs." (*Id.* at p. 838.) The parties then filed a series of dueling applications asking the arbitrator to "correct" the amount awarded for compensatory damages based on their competing arguments about the applicable limitations period. (*Id.* at pp. 838–839.) The arbitrator initially granted the defendant's motion and issued a Second Interim Ruling that "reduced amounts for compensatory damages" to "three years' worth of diverted checks." (*Ibid.*) Later, she issued a "Final Award," this time increasing the amount of compensatory damages based on the plaintiffs' argument that the four-year limitations period for breach of a written contract applied. (*Id.* at pp. 839–840.) Unlike the earlier interim rulings, the Final Award included an amount for the

17

plaintiffs' recoverable attorney fees and costs. (*Id.* at pp. 837–840.)

The trial court in *Lonky* vacated the Final Award, ruling the arbitrator had exceeded her powers by "effectively correct[ing]" her earlier interim ruling in violation of section 1284.[6] (*Lonky, supra,* 51 Cal.App.5th at pp. 840–842.) The *Lonky* court reversed with instructions to enter a new judgment confirming the Final Award. (*Id.* at pp. 848–849.) As the reviewing court explained, section 1284 limits the arbitrator's authority to modify an earlier ruling only if that ruling "qualifies as an 'award' " under section 1283.4. (*Lonky*, at pp. 842–844.) To meet the statute's definitional requirements, a ruling must "(1) 'determine[ ] all issues that are necessary to the resolution' of ' "the controversy" ' being subjected to arbitration, and (2) leave[ ] unresolved only those 'issues' that are 'potential,' 'conditional' or that otherwise 'could not have been determined' at the time of that ruling." (*Id.* at p. 845.) The interim rulings did not satisfy this test because they "did not fix the amount of attorney fees and costs." (*Id.* at p. 846.) Although the arbitrator "*could* have fixed the amount" when she issued either interim ruling, she "defer[red] doing so pending further briefing and a further

---

[6]    Under section 1284, arbitrators "may correct the award upon any of the grounds set forth in subdivisions (a) and (c) of Section 1286.6." Section 1286.6 authorizes a trial court to correct an arbitration award if it determines: "(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

hearing." (*Ibid.*) It did not matter that the earlier interim rulings "resolved the main issues of liability as well as compensatory and punitive damages," or that the Final Award modified the compensatory damages amount for reasons unrelated to the attorney fees and costs award. (*Id.* at pp. 847–848; see also *id* at pp. 838–840.) Until the amount of attorney fees and costs was fixed, the earlier interim rulings remained "preliminary to the full resolution of the issues to be decided," and the arbitrator remained free to modify the earlier rulings notwithstanding the limitations imposed under section 1284 for modification of a final award. (*Lonky*, at pp. 847–848, italics omitted; see also *id.* at p. 843.)

Here, as in *Lonky*, the arbitrator *could have* made a final determination that she had addressed all necessary issues when she served the parties with the First Interim Award.[7] She did not. Instead, she expressly deferred final disposition of

_____

[7] Indeed, the arbitrator made such a final determination in the Final Award, removing the provision authorizing either party to identify undecided issues and concluding the ruling with a statement of finality not present in the First or Second Interim Award: "This Award is binding and is intended to address all issues in dispute even if not expressly discussed herein. The Arbitrator is not empowered to redetermine the merits of any claim already decided. [¶] This Award may be presented to the Court pursuant to CCP §1285 et seq." (Cf. *Lonky, supra,* 51 Cal.App.5th at p. 848 [contrasting preceding interim rulings with final award under section 1283.4, observing "arbitrator called the ruling a 'Second *Interim* Award' (and interim, by definition, means 'not final'), left the amount of attorney fees and costs blank, and qualified that its declaration that '[t]his award resolves all issues submitted for decision in this proceeding' was not to be 'insert[ed]' until the 'Final Award' "].)

19

the matter until 20 days had lapsed or, in the event either party identified an omitted issue or moved for further relief, until she issued a later ruling after additional briefing.  Unlike those cases that have conferred award status on rulings that leave open for future resolution issues that "could *not* have been decided" at that time "because their nature and scope were *uncertain* as of the award date" (*Kaiser, supra,* 13 Cal.App.5th at p. 1149, italics added), the issues the arbitrator deferred in the First Interim Ruling concerned only those matters that had already been presented in the arbitration.  The arbitrator did not reserve jurisdiction to address a contingent matter that could arise only in the future.  (Cf. *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1439 [ruling is an "award" if it resolves all but "those potential and conditional issues that necessarily could not have been determined" at the time of the ruling]; *Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 340–341 (*Roehl*) [ruling is an award when it resolves all issues in controversy, despite reserving jurisdiction to make further determinations " 'in light of new developments' "].)

The record shows the Estate made the authorized written submission, asserting—among other things—the First Interim Award omitted a necessary determination of damages for pre-death loss of dignity.  Because the Estate's submission called for the arbitrator to resolve the issue, the First Interim Award did not "become final" by its terms.  A ruling that reserves a final determination on matters that could have been decided at the time plainly does not satisfy the statutory definition of an "award" under the statute.  (See *Lonky, supra,* 51 Cal.App.5th at p. 846; *Roehl, supra,* 147 Cal.App.4th at p. 350 [by using

20

"future conditional"—" 'is to become' " and "*unless*"—arbitrator plainly "left the matter up for future consideration"].)

When originally presented with the First Interim Award in connection with the Estate's petition to vacate, the trial court correctly focused on the arbitrator's reservation of jurisdiction and recognized that, upon the Estate's written submission, the First Interim Award did not "become final" by its terms. In reaching a different conclusion when later addressing Respondents' petitions to confirm the First Interim Award and vacate the Final Award, the trial court took a different tack. As it explained in its subsequent ruling, the court "substantively review[ed]" the First Interim Award and the Final Award, comparing the arbitrator's findings in each to determine whether the First Interim Award had in fact omitted an issue that the Final Award addressed. The Estate contends the court's "retroactive application of its jurisdiction" contravened established principles of limited judicial review that underpin the efficiency and finality of private arbitration decisions. We agree.

With respect to its jurisdictional analysis, the trial court had it right the first time. In determining whether a court has jurisdiction to confirm a particular ruling as an arbitration award, governing law requires the court to examine "whether the ruling meets the statutory definition of 'award' when considered in the context of the arbitration proceedings agreed to by the parties" and to confer " 'award' status only upon those rulings that resolve every part of the parties' controversy." (*Lonky, supra,* 51 Cal.App.5th at pp. 844–845.) While this mandate permits the court to examine the parties' agreement and the circumstances surrounding the ruling *at the time it was issued,*

21

it does not permit a court to use an arbitrator's *later ruling* to establish the court's jurisdiction *retroactively*.  As our authorities have consistently emphasized, "[a]rbitration is designed to provide ' "an efficient, streamlined" ' mechanism for resolving disputes.  [Citation.]  Ensuring that trial court jurisdiction is reserved for only those arbitral rulings that effectively determine all issues presented for arbitration that are capable of determination at that time means that parties *may not seek seriatim judicial review* of an arbitrator's interlocutory rulings." (*Id.* at p. 845, italics added.)  Adherence to the prescribed process "is critical because such piecemeal judicial intervention would slow down the dispute resolution process as the parties bounce back and forth between the arbitral and judicial fora," as happened here.  (*Ibid.*)

Elmcrest contends the arbitrator's reservation of jurisdiction to decide omitted issues is irrelevant because this clause in the First Interim Award "merely restates existing law related to modifying or changing arbitration awards." We disagree.  It is true that arbitrators are free to—and, indeed, *must*—supplement a "*putatively* final arbitration award" to decide an omitted issue, because a ruling that fails to " 'include a determination of *all* the questions submitted to the arbitrators' " is not an "award" under section 1283.4.  (*Heimlich, supra,* 7 Cal.5th at p. 363, first italics added.)  The clause here, however, does more than simply "restate" this implicit authority.  Rather, it expressly defers finality of the First Interim Award for 20 days and provides that the ruling will not "*become* final" if, during that period, either party submits briefing challenging the completeness of the ruling or moves for additional relief. (Italics added.)  The arbitrator's evident purpose in including

22

the provision was to give the parties an opportunity to review the First Interim Award and submit briefing in response, while retaining jurisdiction to reassess the finality of the ruling based on the parties' submissions. As we have discussed, the First Interim Award thus contemplated additional proceedings before the arbitration concluded and a final award issued.

*Finley v. Saturn of Roseville* (2004) 117 Cal.App.4th 1253 (*Finley*) is instructive. The parties' arbitration agreement in *Finley* provided that, upon " 'either party's written request within 10 days after issuance of the award,' " the award would " 'be subject to reversal and remand, modification, or reduction following review of the record and arguments of the parties by a second arbitrator.' " (*Id.* at p. 1255.) After the arbitrator ruled in the defendants' favor, the plaintiffs requested review by a second arbitrator, but the original arbitrator "declined to intercede on plaintiffs' behalf." (*Id.* at p. 1256.) The plaintiffs then petitioned the trial court to compel review by a second arbitrator. The court denied the request, concluding it was "untimely," and entered judgment for the defendants. (*Id.* at p. 1257.)

The *Finley* court reversed the judgment and held that, although the trial court had properly denied the plaintiffs' motion, it had done so "for the wrong reason." (*Id.* at pp. 1259–1260.) Because the arbitration proceeding had not yet been completed, the trial court had "no jurisdiction to entertain plaintiffs' motion" or to confirm the award. (*Id.* at p. 1260.) The reviewing court explained: "In keeping with the policy of avoiding delays and unnecessary contact with the courts, once a matter has been referred to arbitration, the court's involvement is strictly limited *until the arbitration is completed*. Because

23

the reference to arbitration is essentially an order for specific performance of the arbitration agreement, the arbitration must be considered to include both the initial hearing and decision on the merits *and any postdecision remedies provided for in the arbitration agreement.* [¶] . . . At the time plaintiffs sought relief from the trial court to compel review by a second arbitrator, the arbitration proceeding was not yet completed. Although the matter had been submitted to an arbitrator and the arbitrator had issued a decision, the appellate phase of the proceedings had not yet concluded." (*Id.* at p. 1259, italics added.) Thus, the *Finley* court concluded the trial court "had no jurisdiction to decide if plaintiffs had waived their right of review by failing to make a written request within 10 days of the arbitration decision." (*Id.* at p. 1260.) This was a matter "to be decided *in the arbitration proceedings*." (*Ibid.*, italics added.) And, because the arbitration had not been completed under the terms of the parties' agreement, "the judgment confirming the arbitration award" also was "premature and [had to] be reversed." (*Id.* at pp. 1259–1260.)

There are differences between the agreement in *Finley* and the First Interim Award to be sure, but the crucial similarity is this: like the agreement in *Finley*, the First Interim Award provided for a post-ruling proceeding where the parties, within a designated period of time, could petition the arbitrator to reassess the completeness of the ruling and the availability of further damages before the First Interim Award would "become final." And, like the agreement in *Finley*, the First Interim Award vested *the arbitrator* with authority to conduct this post-ruling proceeding. This was consistent with the rules the parties agreed would govern the arbitration, including ADR

24

Rule 34(a), which authorized the arbitrator to "keep the hearings open to accept post hearing briefs, issue interim Awards, or for any other reason." (See *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1438 (*Greenspan*) ["the rules of a provider like JAMS may determine the scope of the arbitrator's powers"].)[8] As *Finley* teaches, until this post-ruling proceeding was completed and the arbitrator issued her final award, the trial court had no jurisdiction to intercede on behalf of either party to decide issues that had been assigned to the arbitrator to resolve. (*Finley, supra,* 117 Cal.App.4th at pp. 1259–1260.) And, as our high court has consistently recognized, once the arbitrator decided these issues and entered a final award,

_____

[8] While the same rule prohibited the arbitrator from "reconsider[ing] the merits of any claim already decided," ultimately it was for the arbitrator to interpret the scope of the rule and whether her decision contravened it. (ADR Rule 34(e); see *Greenspan, supra,* 185 Cal.App.4th at p. 1451.) As *Greenspan* explains, unless the parties have agreed the arbitrator's interpretation of provider rules may be judicially reviewed on the merits, the court must "defer to the arbitrator's interpretation and application of the Rules." (*Greenspan*, at p. 1451.) The ADR Rules do not provide for judicial review of the arbitrator's determinations regarding the rules' construction. Indeed, although ADR Rule 4 provides that "the provision of law will govern" in the event of a conflict with the rules, it states that such a conflict must be "determined *by the arbitrator*" to exist. (Italics added.) (Cf. *Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 17, 20 (*Cooper*) [where JAMS rule 4 provided that " '[i]f any of these Rules . . . is *determined* to be in *conflict with a provision of applicable law*, the provision of law will *govern over* the Rule in conflict,' " rule could be "reasonably understood to permit *courts*, as well as arbitrators, to make those determinations" (final italics added)].)

25

her determination was entitled to deference and could not be set aside " 'merely because' " the trial court believed the arbitrator had " 'assign[ed] an erroneous reason for [her] decision.' " (*Moncharsh, supra,* 3 Cal.4th at p. 28; *AMD*, *supra*, 9 Cal.4th at pp. 372, 376.)

Elmcrest cites *Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, *Landis v. Pinkertons, Inc.* (2004) 122 Cal.App.4th 985 (*Landis*), and *Cooper, supra,* 230 Cal.App.4th 1 to justify the trial court's inquiry into the credibility and merits of the arbitrator's reasons for amending the First Interim Award. Little discussion of *Severtson* is warranted. The issue in that case was "the meaning of the words 'evident miscalculation of figures' " as used in section 1286.6, subdivision (a). (*Severtson,* at p. 89; see fn. 6, *ante*.) Because application of section 1286.6 assumes the existence of an "award" under section 1283.4, Elmcrest's reliance on *Severtson* simply begs the question. (See *Lonky, supra,* 51 Cal.App.5th at pp. 842–843.) *Landis* and *Cooper* are distinguishable for similar reasons.

In *Landis*, the arbitrator issued an award for economic and emotional distress damages based on a finding that the defendant breached an implied in fact contract not to terminate the plaintiff's employment except for good cause, which the arbitrator determined did not exist. (*Landis, supra,* 122 Cal.App.4th at pp. 987–988.) After the defendant filed a request for correction on the ground that emotional distress damages were not authorized by law, the arbitrator struck those damages and issued a new award. (*Id.* at pp. 988–989.) In affirming the trial court's order confirming the original award, the *Landis* court explained that, apart from the grounds for correction authorized under section 1286.6, the arbitrator could issue a "supplemental

26

award" only "if he or she inadvertently omitted a ruling on a submitted issue in the original award." (*Landis,* at p. 992.) Because the new award "purported to amend or correct the original award, not to add a ruling on an issue submitted for decision but not addressed in the original award," the reviewing court held it was "beyond the arbitrator's power to make." (*Ibid.*)

Our case is materially different from *Landis* because, unlike the award in *Landis*, the First Interim Award reserved a final decision on the completeness of the ruling for a later proceeding, and the arbitrator, in that later proceeding, expressly determined she had omitted a necessary decision on a submitted issue. Although the *Landis* court observed that an "arbitrator may not reconsider the merits of the original award and make a new award under the guise of correction of the award," it made this observation only with respect to the statutory grounds for correcting an award under section 1286.6. (*Landis, supra,* 122 Cal.App.4th at p. 992.) Nowhere did the reviewing court suggest that a trial court may scrutinize the credibility of an arbitrator's finding that she had omitted a necessary decision from an *interim* ruling. Allowing that kind of scrutiny would run counter to the principle of limited judicial review that parties expect will govern their dispute when they contract for private arbitration. (See *Vandenberg, supra,* 21 Cal.4th at pp. 831–832; *AMD, supra,* 9 Cal.4th at p. 376.)

In *Cooper*, the arbitrator issued an "interim award" inviting the defendant to file a motion for attorney fees as the prevailing party in a breach of contract and professional negligence action. (*Cooper, supra,* 230 Cal.App.4th at pp. 6–7.) After receiving the defendant's motion and the plaintiff's opposition, the arbitrator issued a "final award" denying the fee request on the ground that

the defendant had failed to present admissible evidence that it had incurred attorney fees under an effective malpractice insurance policy. (*Id.* at pp. 7–8.) The defendant filed a "motion for 'correction, modification and/or reconsideration' " with the arbitrator, arguing section 1008 authorized reconsideration of the final award "upon a showing of 'new or different facts, circumstances or law.' " (*Cooper*, at pp. 8–9.) The arbitrator granted the motion and issued a "revised final award," concluding relief was proper under section 1008 because the new evidence showed the defendant had " 'made a typographical error' " regarding the date it tendered its defense to its malpractice carrier. (*Cooper*, at p. 9.)

The *Cooper* court held the arbitrator exceeded his authority, concluding the "final award was final for purposes" of limiting the arbitrator's power to make corrections under section 1284. (*Cooper, supra,* 230 Cal.App.4th at p. 15; see fn. 6, *ante*.) The court explained: "[T]he arbitrator expressly identified the final award as his 'Final Award'; it was in writing and was served on the parties; it resolved all the issues reserved in the interim award, including the questions related to attorney fees and costs; and it included determinations on all the issues submitted in the arbitration." (*Cooper*, at p. 19.) The arbitrator's invocation of section 1008 reinforced the final nature of the award, as it showed the arbitrator had intended to "rework the findings in the original award" to address "a typographical error" by the defendant, rather than to "address an omitted issue" or an "error by the arbitrator." (*Cooper*, at p. 15.)

*Cooper* simply reaffirms the established rule that the statutory grounds for correction under section 1284 "do not permit the arbitrator to make substantive changes to the award's

determinations of fact and law" *after* a final award has issued. (*Cooper, supra,* 230 Cal.App.4th at p. 14.) The case does not purport to supplant the principle of limited judicial review, which requires a court to give deference to "the arbitrator's own rational assessment of his or her contractual powers" and "any other factual or legal determination made by the arbitrator" *before* reaching a final award. (*AMD, supra,* 9 Cal.4th at p. 376.)

The parties agreed to have the arbitrator decide all issues stemming from the Estate's claims against Elmcrest. This naturally included a determination of "which issues were actually 'necessary' to the [arbitrator's] ultimate decision." (*Morris, supra,* 69 Cal.2d at p. 690.) The arbitrator issued a First Interim Award that purported to decide all issues, but she expressly deferred a final determination of the matter to allow either party to submit additional briefing identifying an omitted decision or requesting additional relief. In accordance with this provision, the Estate made its written submission, Elmcrest filed its opposition, and the arbitrator made her determination that a necessary decision had been omitted, issuing a Second Interim Award deciding the issue. The arbitrator then considered Elmcrest's motion to vacate the Second Interim Award and rejected Elmcrest's contention that she had impermissibly reexamined the merits, concluding her finding of recklessness supported an award of damages for pre-death loss of dignity, which had been omitted from the First Interim Award. Because the First Interim Award was not a final "award" as defined in section 1283.4, it was not subject to the substantive or procedural limits on modifying awards, and the trial court had no jurisdiction to scrutinize the credibility or merits of the arbitrator's determination that a necessary decision had been omitted. (See *Lonky, supra,* 51 Cal.App.5th at p. 846;

29

see also *Vandenberg, supra,* 21 Cal.4th at pp. 831–832; *AMD, supra,* 9 Cal.4th at p. 376.)  The arbitrator therefore did not exceed her statutory authority to incorporate the omitted decision into the Final Award.  The trial court's ruling to the contrary was incorrect, and the Final Award should have been confirmed. (See § 1286 [If a petition to confirm an arbitration award "is duly served and filed, the court shall confirm the award as made, . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding."].)

## DISPOSITION

The order is reversed and vacated.  The trial court is directed to enter a new order confirming the Final Award served by the arbitrator on September 30, 2022.  The Estate is entitled to costs.


EGERTON, Acting P. J.

We concur:


ADAMS, J.


BERSHON, J.*

---

\*     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 11/7/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ERICKA ORTIZ, as Personal Representative and Administrator, etc., <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> ELMCREST CARE CENTER, LLC, et al., <br><br>     Defendants and Respondents. | B330337 <br><br> Los Angeles County <br> Super. Ct. No. BC702695 <br><br> ORDER CERTIFYING <br> FOR PUBLICATION <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

    The opinion in the above-entitled matter, filed on October 31, 2024, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports.

    There is no change in the judgment.

_____

EGERTON, J. Acting P. J.      ADAMS, J.      BERSHON, J.*

---

*    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.